No. 25-30478

# In the United States Court of Appeals for the Fifth Circuit

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF
ITSELF AND ITS MEMBERS; MYRON SMITH, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NATE WALKER,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;
DARRIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; ALVIN WILLIAMS,
*Plaintiffs-Appellees*

v.

JAMES M. LEBLANC, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY;
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
*Defendants-Appellants*

————————————

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 23-cv-1304, Hon. Brian A. Jackson

————————————

## APPELLANTS' OPENING BRIEF

————————————

*(Counsel listed on inside cover)*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

CAITLIN HUETTEMANN
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
HuettemannC@ag.louisiana.gov

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ Caitlin Huettemann*
CAITLIN HUETTEMANN

## STATEMENT REGARDING ORAL ARGUMENT

This Court has scheduled oral argument in this matter for November 5, 2025 at 9:00 a.m. ECF No. 64.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................. iv

TABLE OF AUTHORITIES ................................................................. vii

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 7

ISSUES PRESENTED ......................................................................... 8

STATEMENT OF THE CASE .............................................................. 9

A.  LEGAL BACKGROUND ........................................................... 9

B.  FACTUAL BACKGROUND ...................................................... 11

SUMMARY OF ARGUMENT ............................................................ 20

LEGAL STANDARD .......................................................................... 24

ARGUMENT ....................................................................................... 24

    I.   REVERSAL IS WARRANTED BECAUSE THE AUGUST 22
         ORDER IS AN IMPERMISSIBLE EXTENSION OF THE VOTE II
         ORDER. ....................................................................... 24

    II.  REVERSAL IS WARRANTED BECAUSE THE AUGUST 22
         ORDER DOES NOT CONTAIN THE PLRA-REQUIRED
         FINDINGS. ................................................................... 33

    III. REVERSAL ALSO IS WARRANTED BECAUSE THE AUGUST 22
         ORDER MISAPPLIES THE EIGHTH AMENDMENT AND RUNS
         AFOUL OF THE PLRA. ................................................... 36

A. The August 22 Order's Eighth Amendment Analysis Is Wrong. ................................................................................37

B. The PLRA Was Intended to Bar This Micromanagement of State Prisons. ....................................................................42

IV. CONSIDERATION OF THE REMAINING PRELIMINARY-INJUNCTION FACTORS IS UNNECESSARY......................................43

CONCLUSION ........................................................................44

CERTIFICATE OF SERVICE..................................................46

CERTIFICATE OF COMPLIANCE ........................................47

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Banks v. Booth,*
  3 F.4th 445 (D.C. Cir. 2021) ............................................................... 10

*Cadena v. Customer Connexx LLC,*
  946 F.3d 717 (5th Cir. 2020) ............................................................... 37

*Cambranis v. Blinken,*
  994 F.3d 457 (5th Cir. 2021) ............................................................... 26

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera
  Ecuatoriana,*
  762 F.2d 464 (5th Cir. 1985) ............................................................... 43

*Farmer v. Brennan,*
  511 U.S. 825 (1994) ............................................................................. 37

*Georgia Advocacy Office v. Jackson,*
  4 F.4th 1200 (11th Cir. 2021), *vacated on settlement
  grounds* 33 F.4th 1325 (11th Cir. 2022) ................................. 11, 26, 27

*Hare v. City of Corinth,*
  74 F.3d 633 (5th Cir. 1996) ................................................................. 40

*LaMarca v. Turner,*
  995 F.2d 1526 (11th Cir. 1993) ........................................................... 40

*Marlowe v. LeBlanc,*
  810 F. App'x 302 (5th Cir. 2020) ........................................................ 44

*Miller v. French,*
  530 U.S. 327 (2000) ......................................................................... 3, 33

*Smith v. Edwards,*
  88 F.4th 1119 (5th Cir. 2023) ..................................................... *passim*

*United States v. Hinds County Board of Supervisors,*
128 F.4th 616 (5th Cir. 2025) ................................... 9, 34, 35

*United States v. Klein,*
543 F.3d 206 (5th Cir. 2008) .............................................. 24

*Valentine v. Collier,*
956 F.3d 797 (5th Cir. 2020) ...................................... *passim*

*Valentine v. Collier,*
978 F.3d 154 (5th Cir. 2020) ..................................... 5, 42, 43

*Villarreal v. Wells Fargo Bank, N.A.,*
814 F.3d 763 (5th Cir. 2016) .............................................. 24

*Voice of the Experienced v. LeBlanc (VOTE II),*
No. 25-30322, 2025 WL 2481382
(5th Cir. Aug. 28, 2025) (per curiam) ................. 2, 17, 25, 31

*Voice of the Experienced v. Westcott (VOTE I),*
No. 24-30420, 2025 WL 2222990
(5th Cir. Aug. 5, 2025) (per curiam) .......................... *passim*

*Woodford v. Ngo,*
548 U.S. 81 (2006) ............................................................ 44

*Yates v. Collier,*
677 F. App'x 915 (5th Cir. 2017) (per curiam) ........... 2, 30, 31

## Statutes

18 U.S.C. § 3626(a)(1)(A) ........................................... *passim*

18 U.S.C. § 3626 (a)(2) .............................................. *passim*

28 U.S.C. § 1331 ................................................................ 7

42 U.S.C. § 1983 ................................................................ 7

**Other Authorities**

U.S. Const. amend. XIII, § 1 ..................................................................... 16

# INTRODUCTION

With apologies for the Groundhog Day-nature of this litigation, the State is here again challenging a wildly illegal preliminary injunction that flies in the face of both the Prison Litigation Reform Act ("PLRA") and the Eighth Amendment.

Over the past year and a half, the district court has entered three preliminary injunctions aimed at regulating the Farm Line at the Louisiana State Penitentiary ("LSP"). First, on July 2, 2024, the district court ordered wide-ranging injunctive relief aimed at heat-related policies within LSP and the Department of Public Safety and Corrections ("DPSC" or "the Department") generally. *See Voice of the Experienced v. LeBlanc*, No. 24-30420 (5th Cir.) (*VOTE I*). By operation of law under the PLRA, however, the *VOTE I* injunction expired 90 days after it was issued. *See* 18 U.S.C. § 3626 (a)(2). A panel of this Court (Judges Oldham, Douglas, Dennis) thus found the State's pending appeal of the *VOTE I* injunction moot and vacated the injunction, as this Court had done twice before in materially identical cases. *Voice of the Experienced v. Westcott*, No. 24-30420, 2025 WL 2222990 (5th Cir. Aug. 5, 2025) (per curiam); *see*

*Smith v. Edwards*, 88 F.4th 1119 (5th Cir. 2023); *Yates v. Collier*, 677 F. App'x 915 (5th Cir. 2017) (per curiam).

Second, while the *VOTE I* appeal was pending, the district court entered a second preliminary injunction on May 23, 2025. *See Voice of the Experienced v. LeBlanc*, No. 25-30322 (5th Cir.) (*VOTE II*). That order contained two mandates, requiring LSP officials to (a) "monitor the heat index on the Farm Line at LSP every 30 minutes" (overriding the current policy set at one hour) and (b) "issue a 'Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit" (overriding the current policy set at 91 degrees Fahrenheit). ROA.10230. However, that injunction also expired 90 days after its issuance under the PLRA. *See* 18 U.S.C. § 3626 (a)(2). A panel of this Court (Judges Stewart, Clement, and Wilson) likewise found the pending appeal moot and vacated the *VOTE II* injunction. *Voice of the Experienced v. LeBlanc*, No. 25-30322, 2025 WL 2481382 (5th Cir. Aug. 28, 2025) (per curiam). (The State has filed a petition for rehearing en banc in *VOTE II* solely on the question whether the capable-of-repetition-yet-evading-review exception to mootness applies in this universe of cases where injunctions expire by operation of law under the PLRA.)

And here we are again. On August 22, 2025 (just one day after the district court allowed the *VOTE II* injunction to expire by operation of law under the PLRA), the district court entered an 8-page order that copies and pastes the relief it issued in the *VOTE II* order—minus the baseless 30-minute monitoring requirement. ROA.11350–57. The August 22 Order, styled as a "successive preliminary injunction," ROA.11351, baldly violates the PLRA. The PLRA imposes stringent requirements that govern when a district court may extend injunctive relief beyond a 90-day period, including the requirement that the court enter a "final" order *before* the expiration of that period. 18 U.S.C. § 3626(a)(2). By the district court's workaround, however, courts can just let an injunction expire for one day and then reenter the same relief without even pretending to satisfy the PLRA's stringent requirements for extending relief. That is lawless. It thumbs its nose at Congress' "principal objective[]" of "curbing the equitable discretion of districts courts." *Miller v. French*, 530 U.S. 327, 339 (2000). And the Court should reverse on that basis alone.

If that were not enough, for all the same reasons that the *VOTE II* injunction was unlawful, so it goes with *VOTE III*. For one, the August

22 Order does not comply with the PLRA. One of the PLRA's core prohibitions is that a court "*shall not* grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A) (emphasis added). The August 22 Order never cites that provision, much less purports to make the necessary findings that could permit injunctive relief.

Although the Court need not proceed further, the August 22 Order—like the *VOTE II* order—also fails on its merits because it is a direct affront to the Eighth Amendment and the PLRA's prohibition on micromanagement of state prisons. Although it (correctly) abandoned its 30-minute mandate from the *VOTE II* Order, the district court's dictate that LSP issue a Heat Alert at 88 degrees Fahrenheit rather than 91 degrees Fahrenheit continues to fail the Eighth Amendment analysis. More, the district court's misapplication of the Eighth Amendment only serves to highlight the related PLRA problem: Issuing directives to Louisiana prison officials down to a few degrees is a "level of micromanagement ... [that] does not reflect the principles of comity

4

commanded by the PLRA." *Valentine v. Collier*, 956 F.3d 797, 806 (5th Cir. 2020). The August 22 Order forces this micromanagement on LSP—simply because the district court disagrees with where Louisiana prison officials drew certain lines. But "[t]he Constitution charges federal judges with deciding cases and controversies, not with running state prisons." *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020) (citation omitted). The district court's attempted control of LSP's Farm Line—down to the degree—fundamentally violates that principle. The Court should reverse.

One final note regarding timing: As the Court is aware from the expedited nature of this proceeding, the August 22 injunction is set to expire on November 20, 2025. The State is grateful to the Court for expediting this case accordingly—and if the Court reverses the August 22 injunction before November 20, that reversal will avoid the mootness issue that arose in *VOTE I* and *VOTE II*. If the Court, however, is unable to issue a decision by that date (or if the Court upholds the August 22 injunction), the State respectfully preserves for en banc review the issue raised in its pending *VOTE II* en banc petition: whether the capable-of-repetition-yet-evading-review exception applies in PLRA cases such as

this where the 90-day deadline routinely defeats effective appellate review absent application of a mootness exception.

## JURISDICTIONAL STATEMENT

The district court has jurisdiction over Plaintiffs' 42 U.S.C. § 1983 action under 28 U.S.C. § 1331. The district court entered the Ruling and Order at issue in this appeal on August 22, 2025. ROA.11350–57. The State filed a notice of appeal that same day. ROA.11358–59.

## ISSUES PRESENTED

1.     Whether the Court should reverse the August 22 Order as an impermissible extension of an expired preliminary injunction prohibited by 18 U.S.C. § 3626(a)(2).

2.     Whether the Court should reverse the August 22 Order for failure to make the findings required by 18 U.S.C. § 3626(a)(1)(A).

3.     Whether the Court should reverse the August 22 Order for failure to comply with the Eighth Amendment and the PLRA's prohibition against micromanagement of state prisons.

## STATEMENT OF THE CASE

### A. Legal Background

This case principally turns on two core aspects of the PLRA. The first is the familiar prohibition that a federal court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). As the Court recently recognized in *United States v. Hinds County Board of Supervisors*, 128 F.4th 616 (5th Cir. 2025), that prohibition is demanding. In *Hinds County*, the Court criticized a district court order that purported to incant "magic words" by simply repeating the statutory language and deeming the need-narrowness-intrusiveness findings requirement satisfied—and the Court reversed on that basis. *See id.* at 639 ("The district court asserted this finding in a conclusory manner and failed to give the necessary explanation and justification to support it.").

The second key aspect of the PLRA relevant here is its 90-day default limit on preliminary prospective relief: "Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry,

9

unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2). As the text shows, a preliminary injunction in the prison context cannot survive past 90 days unless the district court makes the need-narrowness-intrusiveness findings described above. More, the district court must make those findings in a "final" order *before* the expiration of the 90-day period.

In this litigation, this Court has understood that reference to finality to mean that the district court must enter a permanent injunction before the expiration of the 90-day period. *See Westcott*, 2025 WL 2222990, at *3 ("the plaintiff prisoners [] allowed the July 2 preliminary injunction to expire and did not seek to make it permanent under 18 U.S.C. § 3626(a)(2)"). And indeed, that view is shared by the only courts of appeals to expressly consider the meaning of the term "final" as used in § 3626(a)(2). *See Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021) ("[I]f a judge enters a preliminary injunction in a suit covered by this section, that injunction will terminate on its 90th day unless the court has rendered it permanent ...."); *Ga. Advocacy Office v. Jackson*, 4 F.4th 1200,

1211 (11th Cir. 2021), *vacated on settlement grounds*, 33 F.4th 1325 (11th Cir. 2022) ("[T]he entry of a permanent injunction is necessary to prevent a preliminary injunction from expiring by operation of law after 90 days under the PLRA's 'unless' clause.").

## B. Factual Background

The Court is, by this point, well familiar with the facts of this case. The underlying lawsuit involves a challenge by LSP prisoners who claim that conditions at LSP—specifically heat conditions on the Farm Line—violate the Eighth Amendment. The Farm Line comprises a number of prison crews who perform work at LSP. That work involves tasks such as grass-cutting, the planting and harvesting of thousands of fruits and vegetables that feed LSP prisoners, and other forms of labor. ROA.9340–41. In the course of this litigation, the district court has entered three preliminary injunctions, each directed at remedying alleged deficiencies in LSP's operation and maintenance of the Farm Line.[1]

---

[1] For the Court's reference, the three interrelated appeals are:
*Voice of the Experienced v. Westcott (VOTE I)*, No. 24-30420 (5th Cir. July 3, 2024).
*Voice of the Experienced v. LeBlanc (VOTE II)*, No. 25-30322 (5th Cir. May 28, 2025).
*Voice of the Experienced v. LeBlanc (VOTE III)*, No. 25-30478 (5th Cir. Aug. 22, 2025).

**1.** First, the district court entered a preliminary injunction in July 2024 and a subsequent order in August 2024 requiring LSP to undertake various measures to protect prisoners on the Farm Line from heat risks. This Court partially stayed that injunction. Order, *VOTE I*, ECF 41-1. That injunction then expired by operation of law 90 days after its issuance under the PLRA, and a panel of this Court, after finding the then-pending appeal moot, vacated the injunction. *Westcott*, 2025 WL 2222990.

Nonetheless, in response to Plaintiffs' allegations and the district court's directives, LSP has undertaken a wide range of steps designed to combat any perceived heat risks—steps that the State detailed at length in its opening brief in the *VOTE II* appeal. Op. Br., *VOTE II*, ECF 32. For example, LSP has adopted a blanket policy—*i.e.*, without regard to weather or any issuance of Heat Alerts—requiring the following measures: (1) 15-minute rest periods every 45 minutes; (2) the ability to take breaks as needed; (3) access to shade, ice, and water, and cups for water; (4) access to sunscreen; and (5) access to appropriate clothing, gloves, and boots. ROA.8510–11. LSP also built shade wagons that can follow workers in a field (ROA.6175; ROA.8253–73):



LSP has also constructed (and will continue to construct additional) shade pavilions by work fields that enjoy benches, electricity, fans, and water spigots (ROA.9383; ROA.9373):



More, LSP and DPSC have overhauled their policies related to how they monitor for heat risks and accommodate prisoners with particular medical needs. To accomplish these changes, the State hired medical experts to assist in revising its policies. For example, the State hired Dr. Deleca Barnes—the only Doctor of Pharmacy in this case—to revise and

13

expand the Department's Heat Pathology Medication list. *See* ROA.9343. Similarly, the State hired Dr. Carl Keldie—a physician focused on heat at correctional institutions—to advise on revisions to Health Care Policy No. 8 ("HCP8"), a DPSC-wide policy, ROA10195. ROA.9519–34. And in light of this process, LSP updated its own relevant directive—LSP Directive 13.067—to reflect the Department-wide changes as well as LSP's own efforts to control heat risks. ROA.9373.

**2.** In the face of the many changes imposed for the benefit of LSP prisoners, Plaintiffs were still not satisfied. They demanded—and were granted—another preliminary injunction, issued on May 23, 2025. ROA.10193–10230. This second injunction mandated two things: (1) Defendants must "monitor the heat index every 30 minutes on the Farm Line at LSP," ROA.10212, and (2) the State must "issue a 'Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit," ROA.10230.

Both of these mandates, as argued at length in the State's *VOTE II* briefing, were untethered from the law and the facts. As relevant here, Plaintiffs demanded that LSP officials "issue a 'Heat Alert' whenever the heat index meets or exceeds 88 degrees Fahrenheit." ROA.10193. (The

14

issuance of a Heat Alert has no practical effect on average prisoners because they already enjoy the protective measures technically triggered by a Heat Alert; only those prisoners with special precautionary statuses may be transported indoors upon issuance of a Heat Alert. *See* ROA.9378 (water, ice, 15-minute breaks); ROA.9386–87.) As the district court acknowledged, both Department policy and LSP policy currently require a Heat Alert when the heat index exceeds 91 degrees Fahrenheit. ROA.10195–96. Accordingly, Plaintiffs' position is that LSP is violating the Eighth Amendment by not issuing Heat Alerts at *three degrees lower* than what the current policy provides.

The historical context surrounding the Heat Alert threshold is important here. As the district court observed, LSP previously used a threshold of 88 degrees Fahrenheit. ROA.10196–97. Following the State's agency-wide—and LSP-wide—revision of policies and implementation of new protective measures, both the Department and LSP amended the Heat Alert threshold to reflect the current threshold of 91 degrees Fahrenheit. *Id.* No doubt prompted by Plaintiffs' own distortions, the district court's *VOTE II* injunction order suggests that this was a malicious act of backsliding in light of the court's prior (and expired)

injunction. *See* ROA.10225 ("Defendants chose to increase the Heat Alert threshold from 88 to 91 degrees Fahrenheit after the Court ordered Defendants to improve conditions on the Farm Line to preserve human health and safety."). To be clear, the district court's expired *VOTE I* injunction did not purport to bind the State to any particular Heat Alert threshold—in fact, in the district court's own words, it "did not address" the constitutionality of any threshold. ROA.10208.

But more importantly, the State respectfully—but firmly—rejects any suggestion of malicious intent. Given the sweeping measures the State has already implemented, it made the decision (based on advice from medical professionals) to amend the Heat Alert threshold to reflect the updated policies and measures. Any suggestion otherwise is baseless, just as are Plaintiffs' repeated claims that the Farm Line "serv[es] an almost purely penological function" (ROA.10194) and is "similar[] to chattel slavery" (ROA.10194–95). *Cf.* U.S. Const. amend. XIII, § 1 (expressly permitting involuntary servitude "as a punishment for crime whereof the party shall have been duly convicted").

The State immediately appealed the *VOTE II* injunction and sought expedited review. ROA.10231–32. Though a panel of this Court heard

oral argument before the PLRA's 90-day shot clock hit zero, the Court did not issue a merits opinion before the buzzer rang. Rather, the *VOTE II* injunction expired, the appeal was mooted, and the Court vacated the injunction as before. *Voice of the Experienced v. LeBlanc*, No. 25-30322, 2025 WL 2481382 (5th Cir. Aug. 28, 2025).[2]

**3.** On August 22, 2025—one day after the *VOTE II* injunction expired on August 21—the district court entered, at Plaintiffs' request, "a successive preliminary injunction requiring the issuance of a 'Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit." ROA.11351–52. While it acknowledged that "the May 23 Ruling is set to expire by operation of law under the PLRA," the district court found that "none of the material facts underlying the May 23 Ruling have changed, nor has the necessity of the relief the Court ordered." ROA.11352. Thus, based on Plaintiffs' unfounded claim that, without injunctive relief, "Defendants will revert to policies that are

---

[2] As explained above, following the expiration of the *VOTE II* injunction and this Court's vacatur of that injunction, the State filed a petition for rehearing en banc, urging this Court to reconsider its decision in *Smith v. Edwards*, which holds that the expiration of an injunction under the PLRA moots a pending appeal of such injunction. Pet., *VOTE II*, ECF 99. This Court requested a response, ECF 104, and Respondents thereafter filed their opposition, ECF 107. As of the filing of this brief, that petition is pending review by this Court.

likely unconstitutional and that place incarcerated persons on the Farm Line at grave risk," the district court maintained its earlier position and—literally—copied and pasted its work from the expired *VOTE II* injunction into its new August 22 Order. *Id.*

In the sole change from its prior injunction, the district court—in two sentences—finally acknowledged that Plaintiffs' request for a 30-minute heat monitoring procedure, rather than a one-hour procedure, was baseless. The court, recognizing that "the difference at issue is one of thirty minutes," declined to "re-issue this relief at this time." ROA.11356.

Other than its regurgitation of the *VOTE II* order, the district court also gave short shrift to the State's arguments regarding the PLRA's prohibition on successive injunctions. As to the State's argument that the PLRA "bars the issuance of identical and successive preliminary injunctions," the district court again simply cited its *VOTE II* order and rejected the argument in one sentence. ROA.11353. The district court also rejected the State's reliance on this Court's *VOTE I* decision, wherein that panel found vacatur appropriate because "plaintiff prisoners [] allowed the July 2 preliminary injunction to expire *and did not seek to*

18

*make it permanent* under 18 U.S.C. § 3626(a)(2)." *Westcott*, 2025 WL 2222990, at *3 (emphasis added). The district court concluded that, because "Plaintiffs explicitly state that they are not seeking to make the Court's May 23 Ruling permanent," this Court's explanation of the procedure required to "extend" PLRA relief is irrelevant to Plaintiffs' ability to obtain an identical successive preliminary injunction. ROA.11354. Lastly, the district court found that, despite the then-pending appeal of the *VOTE II* injunction, it had the "power" to "maintain[] the status quo" in the litigation by entering another identical injunction. ROA.11355.

To make exceedingly clear what the above shows: The district court expressly sidestepped the PLRA's 90-day limit on prospective relief. It intentionally let the *VOTE II* injunction expire for one day to get out of § 3626(a)(2)'s requirement that any "final" order extending relief be entered *before* the expiration of the 90-day period. Once freed of the PRLA, the district court then completely refused to make the need-narrowness-intrusiveness findings required by § 3626(a)(2), much less to do so in issuing *a permanent injunction* as required by this Court's *VOTE I* decision and decisions from other federal courts of appeals. The gambit

here is unmistakable: Both Plaintiffs and the district court knew that they could not comply with the PLRA to extend the *VOTE II* injunction, so they opted to end-run the PLRA by dressing up the August 22 injunction as a new injunction altogether.

The State again immediately appealed the district court's injunction and sought expedited review, which this Court granted. *VOTE III*, ECF 41, 53. The State also sought a stay of the August 22 Order pending appeal, which this Court granted. *VOTE III*, ECF 42, 59. The August 22 injunction is currently set to expire on November 20, 2025, under the PLRA. *See* 18 U.S.C. § 3626 (a)(2).

## SUMMARY OF ARGUMENT

**I.** Summary reversal is warranted on the plain ground that the August 22 Order violates the PLRA's 90-day expiration period by using a so-called "successive injunction" to swallow the rule. Make no mistake: The August 22 Order is identical in substance to the expired and vacated *VOTE II* injunction. Yet the district court re-issued that relief, one day after it expired, without acknowledging the impact these successive rulings have on the black letter 90-day expiration period for all preliminary injunctive relief. The PLRA is clear that to extend injunctive

relief in such cases, the court must make that relief "final." 18 U.S.C. § 3626(a)(2). The district court declined to do so. That was error warranting summary reversal.

**II.** Summary reversal is also warranted on another straightforward ground: The August 22 Order violates the PLRA's prohibition on prospective relief absent certain specified findings. *See* 18 U.S.C. § 3626(a)(1)(A). Just like the *VOTE II* order that it fully relies upon and replicates, the August 22 Order never so much as cites that prohibition, let alone purports to make the required findings. Worse, the August 22 Order is a mere regurgitation of the conclusions reached in the *VOTE II* injunction, with only a slight nod to the State's arguments regarding successive injunctions within the PLRA context—despite the State's continued insistence that the district court must consider the PLRA's requirements before issuing such relief.

**III.** Although the Court can reverse on the numerous PLRA blunders alone, the August 22 Order commits separate Eighth Amendment and PLRA errors that independently warrant reversal—just as the *VOTE II* order did.

**A.** On the Eighth Amendment front, the district court fundamentally misconstrued the facts and the law. Although it (correctly) abandoned its 30-minute mandate from the *VOTE II* order, the district court's dictate that LSP issue a Heat Alert at 88 degrees Fahrenheit rather than 91 degrees Fahrenheit continues to fail the Eighth Amendment analysis. The only cited basis for the State's supposed deliberate indifference is that the district court's expired injunction from last year said that heat risks increase when the temperature exceeds 88 degrees Fahrenheit. Disregard that the expired injunction "did not address" (the district court's own words) a Heat Alert threshold or what the Eighth Amendment requires, if anything. Disregard also that the expired injunction expressly ensured that LSP could constitutionally operate the Farm Line at temperatures that exceed 88 degrees Fahrenheit with sufficient protective measures in place. And disregard that the State enacted sweeping measures following the district court's expired order, including protective measures that complement the amended Heat Alert threshold. As both a factual and legal matter, the district court cannot excise the Heat Alert issue out of the whole and deem it unconstitutional. Rather, a proper Eighth Amendment analysis

22

assesses the full nature of a defendant's response to claimed constitutional violations—and here, there can be no dispute that the State's holistic measures improving Farm Line conditions comes nowhere close to deliberate indifference.

**B.** The PLRA was intended to prohibit this sort of micromanagement of state prisons by federal courts. This Court has been emphatic that judges are not policymakers or prison wardens. Yet, by seeking to regulate LSP down to the very degree of its policies, the district court in this case is directly contradicting this Court's longstanding precedents. Reversal is warranted to restore the guardrails Congress imposed in the PLRA and the limits reflected in the Eighth Amendment itself.

**IV.** Because the August 22 Order is both unlawful under the PLRA and wrong on the merits, this Court need not address the preliminary-injunction equitable factors—and the district court's own refusal to even mention those factors in its ruling drives the point home. It bears noting, however, that the State prevails on the equities under this Court's many cases recognizing the affront to federalism and prison administration posed by district courts that seek to manage state prison operations. That

is precisely what continues to happen in this case and others like it as Louisiana receives injunction after injunction aimed at installing federal courts as overseers of Louisiana prisons.

## LEGAL STANDARD

This Court "review[s] a district court's grant of a preliminary injunction under an abuse-of-discretion standard." *Smith*, 88 F.4th at 1124. "The failure to follow an applicable statute is always an abuse of discretion." *United States v. Klein*, 543 F.3d 206, 215 (5th Cir. 2008). Similarly, "[a] district court abuses its discretion if it (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (citation omitted).

## ARGUMENT

## I. Reversal Is Warranted Because the August 22 Order Is an Impermissible Extension of the *VOTE II* Order.

In perhaps the most clear violation of the PLRA yet in this litigation, the district court, a mere day after the *VOTE II* preliminary injunction expired by operation of law under 18 U.S.C. § 3626(a)(2), entered the exact same injunctive relief (minus the unfounded temporal monitoring requirement). The district court made no new findings; made

no legal determination under the PLRA's need-narrowness-intrusiveness inquiry; and, with all due respect, made a mockery of the PLRA's 90-day limit for preliminary relief.

**1.** The PLRA provides that "[p]reliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, *unless* the court [(a)] makes the findings required under subsection (a)(1) for the entry of prospective relief and [(b)] makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2) (emphasis added). Under this provision, the district court's May 23 (*VOTE II*) preliminary injunction would expire on August 21 unless the two conditions above were satisfied—indisputably, they were not, and thus the *VOTE II* injunction expired. *See LeBlanc*, 2025 WL 2481382, at *3. That spelled the end—legally and otherwise—of any and all findings, analysis, and relief contained in or flowing from the *VOTE II* order.

The only way the *VOTE II* injunction could have survived the 90-day clock is if the district court had issued a *permanent* injunction resting on the need-narrowness-intrusiveness findings required by the PLRA. *See Jackson*, 4 F.4th at 1211 ("[T]he entry of a permanent injunction is necessary to prevent a preliminary injunction from expiring by operation

of law after 90 days under the PLRA's 'unless' clause."). This follows from the ordinary meaning of finality. A "final" order traditionally refers to one that is "dispositive of the entire case"—and it stands "in direct contrast to interlocutory orders," which address only intermediate matters in the case. *Id.* at 1211 (citation omitted). The most natural way to read the PLRA's text is that a district court's obligation to "make[] the order final" means entering a permanent injunction that resolves the case. *See* 18 U.S.C. § 3626(a)(2).

This reading also follows from basic principles of statutory interpretation. At times, Plaintiffs have appeared to suggest that the PLRA simply requires this Court "to complete or perfect the order by making all the required findings for the entry of preliminary injunctive relief." *Jackson*, 4 F.4th at 1212. But that would create obvious "surplusage" in the statute. *Id.*; *see, e.g.*, *Cambranis v. Blinken*, 994 F.3d 457, 465 (5th Cir. 2021) (reaffirming "the well-established canon of statutory interpretation that courts should construe statutes to avoid rendering language and requirements to be surplusage"). That is because the statute already independently requires a court to "make[] the findings required under subsection (a)(1)"—that is, condition (a)

highlighted above. 18 U.S.C. § 3626(a)(2). That the statute separately requires a court to make its order "final"—that is, condition (b) highlighted above—thus cannot be read to just repeat the requirement that the court make the requisite findings required by condition (a). As the Eleventh Circuit explained, such a reading would "collapse the two requirements into a single requirement, effectively reading the 'final order' requirement out of the statute. This would contravene the rule that a statute ought to be interpreted, where possible, to give effect to all its language." *Jackson*, 4 F.4th at 1213.

Indeed, the State has already pressed this position on appeal in this litigation, and this Court agreed. The question of "extending" preliminary injunctive relief arose in the State's appeal of this Court's July 2 (*VOTE I*) injunction order in the context of who—the State or Plaintiffs—was at fault for the expiration of that order and the mootness of the appeal. The State told the Court that, under binding Fifth Circuit precedent noting a plaintiff prisoner's ability to seek an "extension" of a preliminary injunction, it was Plaintiffs' fault because they never sought to extend the *VOTE I* order. Reply Br. at 6, 8–9 n.3, *VOTE I*, No. 24-30420 (5th Cir. Jan. 9, 2025). Further, the State "urge[d]" the Fifth Circuit "to confirm

27

that, 'given the PLRA's reference to a "final" order, only a permanent injunction can "extend" a preliminary injunction under [the] PLRA.'" *Id.* at 9 n.3 (citation omitted).

A unanimous panel of this Court (Judges Oldham, Douglas, Dennis) agreed with the State in vacating the *VOTE I* injunction. *See Westcott*, 2025 WL 2222990, at *3. "[T]he plaintiff prisoners [] allowed the July 2 preliminary injunction to expire," said the Court. *Id.* In addition, as the State had urged, the Court emphasized that a "preliminary injunction's automatic expiration" naturally results "where plaintiffs [have] not sought *to make it permanent.*" *Id.* (emphasis added). And that was Plaintiffs' error here: They "did not seek to make [the May 23 preliminary injunction] permanent under 18 U.S.C. § 3626(a)(2)." *Id.* That should have spelled the end of the *VOTE II* injunction.

**2.** The district court's issuance of the August 22 injunction shows otherwise—and respectfully, that injunction is utterly lawless. The district court freely admitted that it allowed the *VOTE II* injunction to expire "yesterday." ROA.11351. And yet the district court entered virtually identical relief to the relief issued in the *VOTE II* injunction—again, freely admitting that the court was acting outside of the PLRA's

restrictions on extending preliminary relief in § 3626(a)(2). According to the district court, this *VOTE III* injunction is not an extension at all now that the *VOTE II* has expired—it's just a *successive* injunction. An entirely new injunction free from the PLRA's carefully crafted limits on how long preliminary relief may last.

It is difficult to overstate the lawlessness of this maneuver. The PLRA's 90-day expiration rule is meaningless if district courts can just reenter identical relief again and again regardless of whether they comply with the 90-day rule. Yet that is the district court's view of the PLRA: Just let the relief expire for a day and then enter a new preliminary injunction granting the same relief—all without satisfying the PLRA's conditions for extending that relief: (1) making "the findings required under subsection (a)(1) for the entry of prospective relief" and (2) "mak[ing] the order final before the expiration of the 90-day period." § 3626(a)(2). And a district court is free to rinse and repeat as many times as it wishes wholly disregarding the precise limitations Congress

imposed on prospective relief extending beyond 90 days. That is not how statutory interpretation works.

**3.** The district court declined to seriously engage with these arguments in its August 22 Order. Nor did Plaintiffs provide principled reasons to depart from this conclusion. For example, they cited scattered decisions for the proposition that district courts "nationwide" permit "successive temporary relief under the PLRA." ROA.11318; *see* ROA.11208. None of those decisions are binding here (especially now that *VOTE I* governs)—and more significantly, none of those decisions actually analyze the text of § 3626(a)(2), much less give the term "final" its ordinary meaning, or any meaning at all.

Plaintiffs also claimed that "[t]he Fifth Circuit has implicitly blessed [successive, identical preliminary injunctions] as not running afoul of the PLRA." ROA.11209 (citing *Smith*, 88 F.4th at 1127; *Yates*, 677 F. App'x at 918). That misrepresents *Smith* and *Yates*. Those cases, in part, faulted prisoner plaintiffs for not seeking "an extension" of preliminary injunctive relief. *Smith*, 88 F.4th at 1127 (citing *Yates*, 677 F. App'x at 918). As the unanimous *VOTE I* decision shows, the reference to an "extension" did not suggest a successive, identical preliminary

30

injunction; it was a reference to the prisoner plaintiffs' failure to "seek to make [the original preliminary injunctions] *permanent*." 2025 WL 2222990, at *3 (emphasis added). *Smith* and *Yates* thus never "implicitly blessed" what *VOTE I* now makes clear is squarely prohibited under the PLRA: successive, identical preliminary injunctions.

Plaintiffs also have no answer for the absurdities that flow from how these injunctions have unfolded. The *VOTE I* panel, in vacating the July 2 injunction, explicitly stated that "[n]o further relief issued by the district court in this case can be premised on the validity of its July 2, 2024 order. The July 2 order has been expired since September 2024 and is now vacated, so it has no legal consequences in this litigation." *VOTE I*, 2025 WL 2222990, at *4 n.2. In the August 22 Order, the district court, purporting to heed that mandate, claimed that it was "not relying on its July 2, 2024 Order to make [its] findings—instead, the Court is relying on new evidence presented to the Court for the purpose of the May 23, 2025 [Order]." ROA.11355. But the same logic from *VOTE I* regarding the validity of the July 2 Order must apply to the expired and vacated *VOTE II* injunction, which another panel of this Court vacated under the same principles as those applied in *VOTE I*. *LeBlanc*, 2025 WL 2481382,

31

at *4. Thus, after its expiration (on August 21, 2025) and after the panel vacated it (on August 28, 2025), the *VOTE II* injunction "has no legal consequences in this litigation." *Westcott*, 2025 WL 2222990, at *4 n.2.

In other words, the district court's August 22 Order is now invalidly based upon an expired and vacated order—the *VOTE II* order—that is of no legal effect. This points up one of the many flaws in Plaintiffs' arguments regarding successive injunctions, and in their opposition to the State's en banc petition in *VOTE II*: If these injunctions continue to expire and their related appeals become moot, they will continue to be vacated. And if the district court is permitted to simply re-issue identical relief based on identical factual findings after that expiration, its orders will naturally be based on soon-to-expire orders that, within a few months, lack all legal effect. That makes no sense—and is perhaps why the PLRA mandates permanent injunctive relief rather than *ad infinitum* preliminary 90-day injunctions.

In sum, the only way to "extend" the relief contained in the *VOTE II* injunction was to make that injunction permanent, with the required PLRA findings. The district court did not do so—instead, it Frankensteined its earlier order, bringing back to life a plainly dead

32

injunction that this Court has since held to be of no effect. This Court should therefore summarily reverse the August 22 Order as an impermissible successive injunction.

## II.    REVERSAL IS WARRANTED BECAUSE THE AUGUST 22 ORDER DOES NOT CONTAIN THE PLRA-REQUIRED FINDINGS.

Setting aside the district court's intentional abridgment of the PLRA's 90-day restrictions, the Court should reverse the August 22 Order as a clear violation of the PLRA because, once again, the district court has declined to even mention its obligation to make the need-narrowness-intrusiveness findings under § 3626(a)(1)(A). "[C]urbing the equitable discretion of district courts was one of the PLRA's principal objectives." *Miller*, 530 U.S. at 330. As such, the PLRA expressly bars a court from entering injunctive relief absent certain findings. Specifically, a court "*shall not* grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A) (emphasis added). This Court recently has described these required findings as imposing "strict limits on federal

courts' ability to fashion civil prospective relief" in prison cases. *Hinds County*, 128 F.4th at 625.

The August 22 Order squarely violates the PLRA by entering injunctive relief without the required findings. Because it is a mirror of the *VOTE II* injunction, the order similarly never so much as cites § 3626(a)(1)(A), much less purports to make the findings required by § 3626(a)(1)(A). *See generally* ROA.11350–57. And yet the Order "grant[s]" Plaintiffs' request for prospective relief, "order[ing]" that "Defendants shall issue a 'Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit." ROA.11356–57 (capitalization and bolding altered). The PLRA squarely prohibits this grant of prospective relief absent the PLRA-required findings.

Plaintiffs' arguments on this issue in the *VOTE II* briefing do not compel a different result. *For one*, Plaintiffs asserted previously that a mere citation to § 3626(a)(2) can resolve any error by the district court on this point. But, as *Hinds County* confirms, a bald reference to "§ 3626" does not somehow carry a district court's burden "to make sufficient need-narrowness-intrusiveness findings." 128 F.4th at 622. There, at least the district court "summarily concluded" that its order "satisf[ied] the

34

PLRA's need-narrowness-intrusiveness requirements"—and even that was insufficient to save the order from reversal. *Id.* at 639. By contrast, the district court here again refused to say anything about the required findings. So this is an easy case: Lacking any "necessary explanation and justification" as to the need-narrowness-intrusiveness findings, *id.*, the August 22 Order must be reversed.

*For another*, Plaintiffs' request in the *VOTE II* appeal for this Court to consider *in the first instance* whether the *VOTE II* injunction satisfies the PLRA's limitations is equally invalid in this subsequent appeal. That request is barred by the PLRA itself, which places on "the court" entering the prospective relief—here, the district court—the burden of "find[ing] that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). That is why, for example, this Court in *Hinds County* reversed and remanded, "instruct[ing] the district court on remand" to fix its errors. 128 F.4th at 639. So here.

Plainly put, the district court never made any findings under the PLRA itself to support its August 22 Order. Worse, its truncated analysis

did not purport to make any independent findings from the *VOTE II* order, which independently declined to address the need-narrowness-intrusiveness requirements at all. This fatal defect is straightforward, and reversal can also end here.

### III. REVERSAL ALSO IS WARRANTED BECAUSE THE AUGUST 22 ORDER MISAPPLIES THE EIGHTH AMENDMENT AND RUNS AFOUL OF THE PLRA.

Although the Court need go no further to summarily reverse the August 22 Order, summary reversal is additionally warranted on the merits. The August 22 Order fundamentally misapprehends the Eighth Amendment analysis, and in doing so, engages in the precise sort of micromanagement of state prisons that the PLRA was designed to prohibit.

If these arguments sound familiar, that is because they are identical to the arguments made in the *VOTE II* appeal—minus discussion of the faulty 30-minute monitoring requirement that the district court rightly nixed in its August 22 Order. The district court's repeated reliance on the exact same facts and legal analysis that formed the basis of its May 23 Order from *VOTE II* leads to the same conclusions in this *VOTE III* appeal.

**A.     The August 22 Order's Eighth Amendment Analysis Is Wrong.**

Start with basic Eighth Amendment principles. "In a constitutional claim alleging deliberate indifference to the conditions of a prisoner's confinement, the plaintiff must satisfy both the 'subjective and objective requirements' of the Eighth Amendment inquiry." *Valentine*, 956 F.3d at 801 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)). "To satisfy the objective requirement, the plaintiff must show an 'objectively intolerable risk of harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 846). "To satisfy the subjective requirement, the plaintiff must show that the defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Id.* (cleaned up). "Deliberate indifference is an extremely high standard to meet." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 728 (5th Cir. 2020).

The August 22 Order purports to find this "extremely high standard" met because issuing a Heat Alert at 91 degrees Fahrenheit is unconstitutional, and so LSP officials must now issue a Heat Alert at 88 degrees Fahrenheit. That is wrong, for all the same reasons that it was wrong in the *VOTE II* order on which the district court relies completely.

37

Here, the most glaring error is the district court's subjective deliberate indifference finding. In the *VOTE II* order, the district court said that "deliberate indifference is demonstrated straightforwardly" (ROA.10226) based solely on the fact that the court's expired 2024 *VOTE I* injunction reproduced, in its background section, Plaintiffs' expert's view that heat risks increase when the temperature exceeds 88 degrees Fahrenheit. The district court thus criticized the State for choosing "to increase the Heat Alert threshold from 88 to 91 degrees Fahrenheit *after* the Court ordered Defendants to improve conditions on the Farm Line to preserve human health and safety." ROA.10225. The district court regurgitated those findings in its August 22 Order, with no material change. ROA.11355–56. There are at least three reasons why this Eighth Amendment analysis is wrong.

*First*, the expired *VOTE I* injunction says nothing about a Heat Alert threshold—much less takes a position on what the Constitution requires (if anything) about Heat Alert thresholds. To quote background-section language back to the State as supposed evidence that the State is now operating in a state of criminal recklessness, *see Valentine*, 956 F.3d at 802, is unfair and misplaced.

38

*Second*, the expired *VOTE I* order itself—which predated the extensive measures and policy revisions that the Department and LSP have undertaken—actually contemplated that LSP may constitutionally operate the Farm Line at heat indices above 88 degrees with sufficient protective measures in place. That was the whole point of the district court *rejecting* Plaintiffs' request for an injunction against work on the Farm Line "whenever the heat index is at or above eighty-eight degrees Fahrenheit." ROA.3151. The district court explicitly stated that "agricultural labor does not cease across the South when heat index values reach eighty-eight degrees Fahrenheit." ROA.3152. For the district court to hold—regardless of the measures the State has undertaken after that order—that the Constitution requires a Heat Alert at 88 degrees Fahrenheit thus yanks the rug out from under the State. Adding insult to injury is the accusation that the State is subjectively and deliberately indifferent to the health of the very prisoners for whom all these measures have been installed.

*Third*, and perhaps most important, these commonsense problems demonstrate the district court's fundamental misapprehension about how the Eighth Amendment analysis works in a case like this, in which

a defendant is actively responding to alleged constitutional problems. In such cases, the subjective component of the deliberate-indifference inquiry must be "satisfied [] in respect to the response itself." *Hare v. City of Corinth*, 74 F.3d 633, 649 n.5 (5th Cir. 1996); s*ee also LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) ("[I]f an official attempts to remedy a constitutionally deficient prison condition, but fails in that endeavor, he cannot be deliberately indifferent unless he knows of, but disregards, an appropriate and sufficient alternative."). Here, the State's amendment of the Heat Alert threshold did not occur in a vacuum, but rather alongside the construction of shade wagons and pavilions, the revision and expansion of a medications list, the revision and expansion of heat policies themselves, and the imposition of protective measures *regardless of the weather*: (1) 15-minute rest periods every 45 minutes; (2) the ability to take breaks as needed; (3) access to shade, ice, and water, and cups for water; (4) access to sunscreen; and (5) access to appropriate clothing, gloves, and boots. ROA.8510–11.

By gerrymandering the Heat Alert threshold amendment out of that sweeping effort and deeming it unconstitutional, the district court fundamentally misapprehended the proper Eighth Amendment analysis.

The district court was instead required to assess the reasonableness of the *collective* response itself—something Plaintiffs seemingly recognized in the *VOTE II* briefing. *See* Resp. Br., *VOTE II*, ECF 60 at 28, 60. Under that corrected lens, amending the Heat Alert threshold itself does not reflect subjective deliberate indifference because—as the State's medical professionals advised the State—"there is little or no risk" to prisoners who have access to the new protective measures. ROA.9526; *accord* ROA.9530. Put otherwise, the district court cited no evidence suggesting that the State operated with criminal recklessness in amending the Heat Alert threshold alongside each of the other myriad policy changes that have occurred over the past year. As in the *VOTE II* injunction, the district court declined here to address any of the relevant conditions— and that is fatal.

Worse still, in the August 22 Order, the district court did not purport to make a subjective deliberate indifference finding *at all*. Rather, in finding "relief warranted" yet again, the district court reiterated Plaintiffs' expert's findings regarding the dangers of heat exposure at or above 88 degrees. ROA.11355–56. Finding injunctive relief necessary "[t]o protect human health and safety," the district court

simply reissued its prior relief. ROA.11356. Nowhere in that copy-and-paste analysis did the district court purport to re-assert its (erroneous) conclusion that the State was deliberately indifferent by increasing the Heat Alert threshold following some amorphous findings in earlier litigation. Again, this dooms the district court's Eighth Amendment analysis.

## B. The PLRA Was Intended to Bar This Micromanagement of State Prisons.

As the State also has emphasized in the prior appeals, it is remarkable that, some 30 years after the PLRA was enacted, we are litigating a district court's (duplicated) attempt to alter prison operations in a matter of degrees. If this Court has been clear about anything, it is that "federal judges are not policymakers." *Valentine*, 978 F.3d at 165. "The Constitution charges federal judges with deciding cases and controversies, not with running state prisons." *Id.* (citation omitted). The PLRA breathed life into that principle by "command[ing]" "comity"— getting federal judges out of the business of "micromanagement [of state prisons], enforced upon threat of contempt." *Valentine*, 956 F.3d at 806.

Put simply, the judiciary's "conscribed role is not to assess whether prison officials could have done more"—"[n]or is it to micromanage prison

operations." *Valentine*, 978 F.3d at 158. Instead, its "limited role is [] to determine whether [LSP] has ... satisfied the constitutionally required minimum." *Id.* More: This Court "must do so within strict procedural bounds mandated by Congress. [It is] forbidden to do more." *Id.* The August 22 Order directly flouts these basic principles.

## IV. CONSIDERATION OF THE REMAINING PRELIMINARY-INJUNCTION FACTORS IS UNNECESSARY.

The district court's failure to abide by the PLRA's mandates, *supra* Sections I, II, and the court's merits errors, *supra* Section III, mean that the August 22 Order cannot stand. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) ("[I]f the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal."). Further, while the district court at least purported to conduct *some* equities analysis in its *VOTE II* order, the court declined to address the equities *at all* in its August 22 Order. Mere gestures at "preserv[ing] human health and safety" are insufficient. ROA.11353.

Regardless, the State plainly prevails in any equities analysis, as this Court recognized at the stay stage in *VOTE I*—and implicitly

recognized again in staying the August 22 injunction pending appeal. *See* Order, *VOTE III*, ECF 59. "[I]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." Order at 9–10, *VOTE I*, ECF 41-1 (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)). "The Louisiana Legislature assigned the prerogatives of prison policy to DPSC." *Id.* at 10 (quoting *Marlowe v. LeBlanc*, 810 F. App'x 302, 306 (5th Cir. 2020) (per curiam)). "The district court's order therefore 'prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury.'" *Id.* (quoting *Valentine*, 956 F.3d at 803). That tips the scale in the State's favor.

## CONCLUSION

The Court should summarily reverse the August 22 Order.

Respectfully submitted,

Dated:    October 20, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Caitlin Huettemann*
J. BENJAMIN AGUIÑAGA
Solicitor General
CAITLIN HUETTEMANN
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
HuettemannC@ag.louisiana.gov

**CERTIFICATE OF SERVICE**

I certify that on October 20, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.


*/s/ Caitlin Huettemann*
CAITLIN HUETTEMANN

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 8,248 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

/s/ Caitlin Huettemann
CAITLIN HUETTEMANN

Dated:    October 20, 2025