**No. 25-30478**

# In the United States Court of Appeals for the Fifth Circuit

---

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF ITSELF AND ITS MEMBERS; MYRON SMITH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NATE WALKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DARRIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; ALVIN WILLIAMS,
*Plaintiffs-Appellees*

v.

JAMES M. LEBLANC, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY; LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
*Defendants-Appellants*

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA (NO. 23-CV-1304) (THE HONORABLE BRIAN A. JACKSON)*

---

**PLAINTIFFS-APPELLEES' OPENING BRIEF**

---

*(Counsel listed on inside cover)*

SAMANTHA POURCIAU
THE PROMISE OF JUSTICE INITIATIVE
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel:  (504) 529-5955
*sbosalavage@defendla.org*

LYDIA WRIGHT
RIGHTS BEHIND BARS
1800 M St. NW
Fnt. 1 #33821
Washington, D.C. 20033
Tel:  (202) 455-4399
*lydia@rightsbehindbars.org*

JOSHUA HILL JR.
JEREMY A. BENJAMIN
LEAH R. WEISER
CHIZOBA D. WILKERSON
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000
*jhill@paulweiss.com*
*jbenjamin@paulweiss.com*
*lweiser@paulweiss.com*
*cwilkerson@paulweiss.com*

KIMBERLY GRAMBO
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006-1047
Tel.: (202) 223-7300
Fax:  (202) 223-7420
*kgrambo@paulweiss.com*

ANNA M. STAPLETON
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
535 Mission Street, 25th floor
San Francisco, CA 94105
Tel:  (628) 432-5100
Fax:  (628) 232-3101
*astapleton@paulweiss.com*

# CERTIFICATE OF INTERESTED PERSONS

_____

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| Parties | Counsel and Law Firms |
|---|---|
| PLAINTIFFS-APPELLEES<br>Voice of the Experienced, also known as VOTE, Myron Smith, Damaris Jackson, Nate Walker, Darrius Williams, Kevias Hicks, Joseph Guillory, and Alvin Williams | PROMISE OF JUSTICE INITIATIVE<br>Samantha Pourciau<br><br>RIGHTS BEHIND BARS<br>Lydia Wright<br><br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>Joshua Hill Jr.<br>Jeremy A. Benjamin<br>Kimberly Grambo<br>Anna M. Stapleton<br>Leah R. Weiser<br>Chizoba D. Wilkerson |
| DEFENDANTS-APPELLANTS<br>James LeBlanc, Secretary, Department of Public Safety and Corrections;<br>Tim Hooper, Warden, Louisiana State Penitentiary; and<br>Louisiana Department of Public Safety and Corrections; | KEOGH, COX & WILSON, LTD.<br>Andrew Blanchfield<br>C. Reynolds LeBlanc<br>Chelsea A. Payne<br><br>ATTORNEY GENERAL OF LOUISIANA<br>Elizabeth B. Murrill<br>J. Benjamin Aguiñaga |
| AND<br>Gary Wescott, Secretary, Department of Public Safety and Corrections; and<br>Darrel Vannoy, Warden, Louisiana State Penitentiary | |

*/s/ Jeremy A. Benjamin*
JEREMY A. BENJAMIN
*Attorney of Record for Appellees*

OCTOBER 20, 2025

ii

## STATEMENT REGARDING ORAL ARGUMENT

This Court has requested Oral Argument in this appeal. ECF No. 64. Oral Argument is currently scheduled for November 5, 2025 at 9:00 am Central Time, Session Number 17.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................. 1

STATEMENT OF THE ISSUES ................................................... 2

INTRODUCTION ................................................................. 3

STATEMENT OF THE CASE ....................................................... 5

    A.   July 2024 Order and *VOTE I* ................................. 5

    B.   DOC Raises Its Heat Alert Threshold......................... 8

    C.   The May 2025 Order and *VOTE II*............................. 9

    D.   The August 2025 Order ..................................... 12

    E.   *VOTE III* ................................................ 14

SUMMARY OF THE ARGUMENT..................................................... 16

STANDARD OF REVIEW ......................................................... 18

ARGUMENT ................................................................... 19

I.    THE PLRA PERMITS SUCCESSIVE PRELIMINARY INJUNCTIONS................................................. 20

    A.   The District Court Acted Within Its Authority in Granting a Successive Injunction................................ 21

    B.   DOC Mischaracterizes the August 2025 Order and Advances an Untenable Interpretation of the PLRA. ................................................ 24

II.   THE AUGUST 2025 ORDER SATISFIES THE PLRA'S REQUIREMENTS FOR A PRELIMINARY INJUNCTION................................................. 27

    A.   The August 2025 Order Is Necessary, Narrow, and Non-Intrusive. .................................... 27

    B.   The District Court Is Not Required to Make Subsection 3626(a)(1) "Findings" when Issuing a Preliminary Injunction Pursuant to Subsection 3626(a)(2). ................................................ 31

iv

1.    *The Text and Structure of the PLRA Make Clear That Subsection 3626(a)(1)'s Requirements Do Not Apply to the August 2025 Order.* ................................................................ 31

2.    *The PLRA's Legislative History Confirms That Subsection 3626(a)(1)'s "Findings" Requirements Do Not Apply to the August 2025 Order.* ................................................................ 38

CONCLUSION ................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alloway* v. *Hodge*,
  72 F. App'x 812 (2003) ................................................................ 23

*Amoco Prod. Co.* v. *Vill. of Gambell, AK*,
  480 U.S. 531 (1987) ................................................................... 36

*Ball* v. *LeBlanc*,
  988 F. Supp. 2d 639 (M.D. La. 2013) ......................................... 4

*Banks* v. *Booth*,
  3 F.4th 445 (D.C. Cir. 2021) ..................................................... 25

*Brown* v. *Plata*,
  563 U.S. 493 (2011) ......................................................18, 29, 30

*Califano* v. *Yamasaki*,
  442 U.S. 682 (1979) ................................................................... 21

*Cole* v. *Collier*,
  No. 4:14-cv-01698 (S.D. Tex. Oct. 12, 2017).............................. 24

*Davis* v. *Michigan Dep't of Treasury*,
  489 U.S. 803 (1989) ................................................................... 35

*Edmo* v. *Corizon, Inc.*,
  935 F.3d 757 (9th Cir. 2019) ..................................................... 22

*Farmer* v. *Brennan*,
  511 U.S. 825 (1994) ................................................................... 26

*Gates* v. *Cook*,
  376 F.3d 323 (5th Cir. 2004) ..................................................... 24

*Georgia Advocacy Off.* v. *Jackson*,
  4 F.4th 1200 (11th Cir. 2021)..................................................... 25

vi

*Guzman* v. *Hacienda Recs. & Recording Studio, Inc.*,
    808 F.3d 1031 (5th Cir. 2015) ................................................... 18

*Janvey* v. *Alguire*,
    647 F.3d 585 (5th Cir. 2011) ..................................................... 18

*King* v. *Burwell*,
    576 U.S. 473 (2015) ................................................................. 35

*Landmark Land Co.* v. *Off. of Thrift Supervision*,
    948 F.2d 910 (5th Cir. 1991) .................................................... 37

*United States* v. *M/Y Galactica Star*,
    13 F.4th 448 (5th Cir. 2021) ..................................................... 18

*Mayweathers* v. *Newland*,
    258 F.3d 930 (9th Cir. 2001) .................................................... 22

*Melendez* v. *Sec'y, Fla. Dep't of Corr.*,
    No. 21-13455, 2022 WL 1124753 (11th Cir. Apr. 15,
    2022) ....................................................................................... 23

*Monroe* v. *Bowman*,
    122 F.4th 688 (7th Cir. 2024)............................................. 22, 23

*United States* v. *Munsingwear, Inc.*,
    340 U.S. 36 (1950) ..................................................................... 8

*Neal* v. *Sky Chefs, Inc.*,
    39 F.3d 321 (5th Cir. 1994) ...................................................... 18

*Matter of Nobleman*,
    968 F.2d 483 (5th Cir. 1992) .................................................... 37

*Perrone* v. *Gen. Motors Acceptance Corp.*,
    232 F.3d 433 (5th Cir. 2000) .................................................... 38

*Pulsifier* v. *United States*,
    601 U.S. 124 (2024) ................................................................. 36

*Robinson* v. *Labrador,*
    No. 1:24-cv-00306-DCN, 2024 WL 4953686 (D. Idaho
    Dec. 3, 2024) ............................................................................. 23

*Ross* v. *Johnson,*
    No. 2:22-cv-00259-CDS-VCF, 2023 WL 3864995
    (D. Nev. June 6, 2023) ............................................................. 23

*Russello* v. *United States,*
    464 U.S. 16 (1993) .................................................................... 34

*Texas* v. *Trump,*
    127 F.4th 606 (5th Cir. 2025) .................................................. 34

*Victory* v. *Berks Cnty.,*
    789 F. App'x 328 (3d Cir. 2019) .............................................. 39

*Voice of the Experienced* v. *LeBlanc,*
    No. 25-30322 (5th Cir.) ..................................................... 12, 33

*Voice of the Experienced* v. *LeBlanc,*
    No. 25-30478 (5th Cir.) ......................................................*passim*

*Voice of the Experienced* v. *Westcott,*
    No. 24-30420 (5th Cir.) ........................................................ 7, 8

## Statutes

18 U.S.C. § 3626 ................................................................*passim*

28 U.S.C. § 1292(a)(1) ............................................................. 1

28 U.S.C. § 1331 ....................................................................... 1

42 U.S.C. § 1983 ....................................................................... 1

## Other Authorities

U.S. Const. Amend. VIII ..................................................*passim*

*Prison Reform: Enhancing the Effectiveness of
Incarceration: Hearing on S. 3, S. 38, S. 400, S. 866,
S. 930, and H.R. 667 Before the S. Comm. on the
Judiciary*, 104th Cong. 104-573 (1995)..................................... 38

*Prison Conditions Litigation Reform Act*, S. 1275,
104th Cong. § (a)(2) (1995) ................................................ 38, 39

# STATEMENT OF JURISDICTION

The district court has jurisdiction over Plaintiffs-Appellees' 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331. Defendants-Appellants seek review of an interlocutory order by the district court granting an injunction, and this Court accordingly has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES[1]

1. Whether the Prison Litigation Reform Act of 1996 (the "PLRA") allows for successive preliminary injunctions or limits a plaintiff to a single preliminary injunction over the lifespan of a litigation.

2. Whether subsection 3626(a)(2) of the PLRA requires a district court to make "findings" that a 90-day preliminary injunction is sufficiently necessary, narrow, and non-intrusive.

---

[1] Plaintiffs-Appellees' statement of the issues is premised on arguments made by Defendants-Appellants in their previously filed motion to stay. *See* Renewed Motion to Stay the August 22 Injunction Order Pending Appeal, *Voice of the Experienced* v. *LeBlanc*, No. 25-30478 (5th Cir. Sep. 11, 2025), ECF No. 42. Plaintiffs reserve the right to supplement or amend this statement after receiving Defendants-Appellants' opening brief.

## INTRODUCTION

Plaintiffs-Appellees are seven men incarcerated at the Louisiana State Penitentiary ("LSP") and Voice of the Experienced, a nonprofit membership group that comprises currently and formerly incarcerated people (collectively, "Plaintiffs"). Plaintiffs brought this class action lawsuit to challenge the "Farm Line," a punitive disciplinary program that Defendants-Appellants—the Louisiana Department of Public Safety & Corrections and state prison officials (collectively, "DOC")—operate at LSP. On the Farm Line, incarcerated men are forced to perform dehumanizing and harsh labor under unsafe conditions. During periods of extreme heat, these conditions quickly become life-threatening.

In the two years since this litigation began, Plaintiffs have been required to seek preliminary relief on three separate occasions to prevent unreasonable risk to the health and safety of men laboring on the Farm Line when the Louisiana heat reaches dangerous levels. The district court has issued three responsive and increasingly narrow 90-day preliminary injunctions, with the August 22, 2025 order (the "August 2025 Order") that is the subject of this appeal being the second such 90-day preliminary injunction this year.

That order is straightforward:  it requires only that with respect to the Farm Line, DOC temporarily revive its longstanding policy of calling a "Heat Alert," the trigger for various heat precautions, when the heat index reaches or exceeds 88°F.[2]  DOC's appeal of that mandate has no merit.   DOC avers, with no textual support from the PLRA, that successive preliminary injunctions are impermissible under that statute, and that the August 2025 Order must be reversed for lack of "findings" that are not required under the PLRA for entry of *preliminary* injunctive relief.   DOC is left to make these atextual arguments as they have no meaningful challenge to the district court's underlying finding that Plaintiffs are likely to succeed on the merits of their Eighth Amendment claims.

---

[2]  The "heat index," or apparent temperature, is a measurement that combines air temperature and relative humidity.   It is a better indication of how the body experiences heat than air temperature alone.   *See* ROA.423–424 ¶ 31; *Ball* v. *LeBlanc*, 988 F. Supp. 2d 639, 671–72 (M.D. La. 2013), *aff'd in part, vacated in part, remanded*, 792 F.3d 584 (5th Cir. 2015).

## STATEMENT OF THE CASE

### A.   July 2024 Order and *VOTE I*

On September 16, 2023, Plaintiffs filed this putative class action on behalf of themselves and all others similarly situated to challenge DOC's operation of the Farm Line, a punitive form of compulsory agricultural labor meant to degrade, demean, and "break" men incarcerated at LSP by forcing them to labor in former plantation fields under conditions that resemble chattel slavery and that are physically and psychologically dangerous.  Plaintiffs allege that DOC's operation of the Farm Line violates the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act.

The Farm Line is particularly dangerous when heat indices in the fields rise to levels widely known to pose significant risks to human health and safety.  Thus, in May 2024, with the summer heat approaching, Plaintiffs sought a first preliminary injunction prohibiting DOC from operating the Farm Line whenever the heat index met or exceeded 88°F.  ROA.382.  In support of their motion, Plaintiffs offered substantial evidence that 88°F is the well-understood heat index threshold at which prolonged, insufficiently mitigated heat exposure becomes highly dangerous to human health.  *See, e.g.*, ROA.389–395.

This evidence included unrebutted declarations from Plaintiffs' expert, Dr. Susi Vassallo, a widely recognized expert in the field of thermoregulation.[3] ROA.3121–127; *see also* ROA.3090 n.4.

At the time, DOC's own policies endorsed an 88°F heat index as a critical tipping point: at that threshold, DOC's heat pathology policies, Health Care Policy No. 8 ("HCP8") and LSP Directive No. 13.067,[4] required that LSP call a "Heat Alert," triggering various mandatory heat precautions in outdoor areas. ROA.7796, 8232. These protections included that individuals with recognized heightened heat sensitivity be brought inside and that everyone else receive regularly scheduled breaks where they can access clean water and ice. ROA.7795–796, 8230–232. Both policies required LSP to monitor the heat index every two hours using a free website maintained by the National Weather Service. ROA.7796, 8231.

---

[3] Thermoregulation is the process by which the human body maintains its temperature within a safe physiological range in response to internal and external thermal stimuli. ROA.421 ¶ 19. The body's safe physiologic range is typically a set point plus or minus 0.8°F of 98.6°F. ROA.421 ¶ 19.

[4] HCP8 applies to all DOC facilities and LSP Directive No. 13.067—a functional equivalent of HCP8—applies only to LSP. ROA.7793, 8228.

On July 2, 2024, the district court granted in part Plaintiffs' first motion for preliminary relief (the "July 2024 Order"), declining to enjoin the Farm Line in its entirety but "order[ing] Defendants to alter Farm Line working conditions to preserve human health and safety." ROA.3084. The district court required that DOC "take immediate measures to correct the glaring deficiencies in their heat-related policies" such as "failure to provide adequate shade, rest, sunscreen, and other protective equipment," and failure to accommodate people with an impaired ability to thermoregulate. ROA.3084, 3158. The district court required DOC to propose "remedies that comply with the findings" of the July 2024 Order within seven (7) days. ROA.3159–160.

DOC immediately appealed ("*VOTE I*")[5] and sought an administrative stay of the July 2024 Order pending appeal. ROA.3162; *VOTE I*, ECF No. 12. A motions panel of this Court stayed in part the district court's order as overbroad under the PLRA where the relief appeared to reach beyond the Farm Line—but declined to stay the relief

---

[5] *VOTE I* refers to appellate docket *Voice of the Experienced* v. *Westcott*, No. 24-30420 (5th Cir.).

targeted to the Farm Line.  *See VOTE I*, ECF No. 41-1 at 5 (Ho, Wilson, Ramirez, JJ.).

DOC subsequently proposed purported remedies to ameliorate the harmful conditions identified in the July 2024 Order.  *See* ROA.3370–373.  Plaintiffs challenged DOC's supposed remedies as insufficient, and the district court agreed, noting DOC's "bad faith" and "apparent obstinance towards proposing meaningful changes to the conditions on the Farm Line."  ROA.3599, 3602–605.

The July 2024 Order expired in September 2024 pursuant to the PLRA's 90-day expiration provision while the *VOTE I* appeal was pending.  The parties agreed that the appeal was accordingly moot, and the *VOTE I* panel ultimately vacated the July 2024 Order without reaching the merits, pursuant to the *United States* v. *Munsingwear, Inc.*, 340 U.S. 36 (1950) doctrine.  *VOTE I*, ECF No. 123-1 at 7–8 (Dennis, Oldham, Douglas, JJ.).

## B.    DOC Raises Its Heat Alert Threshold

Despite district court rulings and myriad evidence that the Farm Line poses great danger to human health at heat indices exceeding 88°F, in October 2024, DOC revised its heat pathology policies to *increase* the

heat index at which a Heat Alert is issued—changing the threshold from 88°F to 91°F. *See* ROA.6178, 1077, 6188. Around this same time, the district court adjourned the scheduled November 2024 trial in this matter without setting a new date. ROA.6175.

## C.   The May 2025 Order and *VOTE II*

In March 2025, with the July 2024 Order expired, a new and substantially less protective Heat Alert policy in effect, no trial scheduled, and another period of high heat approaching, Plaintiffs were forced to seek preliminary injunctive relief a second time to ensure the safety of men on the Farm Line. Accordingly, Plaintiffs moved for, *inter alia*, a temporary restraining order enjoining DOC to: (i) lower the Heat Alert heat index threshold from 91°F to its historical trigger of 88°F; and (ii) monitor the heat index every 30 minutes to ensure that Heat Alerts are timely called.[6] ROA.7298. The district court heard oral argument on Plaintiffs' motion on April 22, 2025, and incorporated into the proceedings relevant testimony from Plaintiffs' thermoregulation expert,

---

[6] Plaintiffs concurrently moved for a preliminary injunction seeking the same and additional relief. ROA.7298. The district court has yet to rule on that motion. Given the current procedural posture of the underlying case, Plaintiffs respectfully asked the district court to carry the motion for a second preliminary injunction with the case. ROA.11403.

Dr. Vassallo, and DOC's correctional health expert, Dr. Carl Keldie, provided during a class certification hearing that was held that same week. ROA.10089, 10199, 10219–226.

In a well-reasoned opinion issued on May 23, 2025, the district court granted Plaintiffs' TRO in full, ordering that DOC, solely with respect to the Farm Line, issue a Heat Alert when the heat index meets or exceeds 88°F and monitor the heat index every 30 minutes (the "May 2025 Order").[7] ROA.10199.

In support of its May 2025 Order, the district court cited Dr. Vassallo's "credible" testimony, which demonstrated that the risk of heat-related illness increases almost exponentially when the heat index reaches or exceeds 88°F. ROA.10219–221 (citing research shown in scientific studies finding that heat-related mortality occurs with increased frequency when the heat index meets and exceeds approximately 30°C (86°F), an increase that reflects the exponential rise of a "J-Shaped" curve); *see* ROA.10142; *see also* ROA.10039–042.

---

[7] The district court subsequently clarified that the TRO would remain in effect for 90 days. ROA.11035–036. The parties agree, therefore, that it should be considered as a preliminary injunction.

Plaintiffs' evidence was virtually uncontested.  The district court found that the evidence DOC purported to rely on in establishing its new 91°F threshold—guidance from the National Weather Service, Occupational Safety and Health Administration, and the U.S. Army— "either d[id] not support" or "outright contradict[ed]" DOC's new 91°F heat index threshold.  ROA.10223–228.  The district court further found Dr. Keldie to be "wholly uncredible" for a multitude of reasons. ROA.10223–226.

Based on these findings, the district court concluded that Plaintiffs had demonstrated that DOC's new Heat Alert threshold likely "[s]ubject[ed] incarcerated persons to high heat conditions without adequate mitigatory procedures" in satisfaction of "the substantial risk of serious injury or death element of an Eighth Amendment claim." ROA.10218 (quoting *Hinojosa* v. *Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) ("[I]nmates have a right, under the Eighth Amendment, not to be subjected to extreme temperatures without adequate remedial measures.")).  It further concluded that DOC was aware of and disregarded that risk, in satisfaction of the "deliberate indifference" prong of the Eighth Amendment; especially considering that DOC had

11

been presented with evidence of the risks of heat indices above 88°F during the course of litigating the July 2024 injunction, "ignored these compelling medical findings," and subsequently raised the threshold beyond that point. ROA.10232.

DOC immediately appealed the May 2025 Order ("*VOTE II*").[8] ROA.10237. Pursuant to the PLRA's 90-day limit for preliminary injunctive relief, the injunctive relief provided under the May 2025 Order expired on August 21, 2025. ROA.11035. On August 28, 2025, as in *VOTE I*, a panel of this Court held the *VOTE II* appeal was moot and vacated the May 2025 Order. *VOTE II*, ECF No. 96-1 at 5–8.[9]

### D.    The August 2025 Order

The May 2025 Order was set to expire as a matter of law on August 21, 2025, when heat conditions at LSP would still regularly be reaching dangerous levels. ROA.11351. On July 28, 2025, Plaintiffs accordingly moved to renew the May 2025 Order by seeking a separate, identical

---

[8]   *VOTE II* refers to appellate docket *Voice of the Experienced* v. *LeBlanc*, No. 25-30322 (5th Cir.) (Stewart, Clement, Wilson, JJ.).

[9]   DOC subsequently filed a petition for rehearing en banc of the *VOTE II* decision finding the May 2025 Order moot. *VOTE II*, ECF No. 99. On September 15, 2025, the Fifth Circuit requested Plaintiffs' response, which Plaintiffs submitted on September 19, 2025 opposing en banc rehearing. *VOTE II*, ECF Nos. 104, 107. No decision on DOC's en banc petition has issued and the mandate from the Fifth Circuit is still being withheld.

preliminary injunction that would maintain the status quo and protect incarcerated men on the Farm Line from DOC's deliberate indifference to heat-related harms.  ROA.11198, 11202.

On August 22, 2025, the district court granted Plaintiffs' motion in part, and issued the August 2025 Order that is the subject of this appeal. ROA.11350, 11355–357.  Finding "that no facts or law have changed in the intervening 90 days [since the May 2025 Order] to change the necessity of the 88 degree Fahrenheit Heat Alert threshold," the district court issued a "successive preliminary injunction," valid for 90 days, again ordering DOC to issue a Heat Alert on the Farm Line whenever the heat index met or exceeded 88°F.  ROA.11355.  The district court fully incorporated its factual findings and legal conclusions from the May 2025 Order, which were in turn based on the extensive evidence and credibility determinations drawn from live witness testimony in April 2025. ROA.11355.  For example, the district court reiterated Dr. Vassallo's "credibl[e]" testimony as to the "substantial risk of serious harm" posed by "prolonged exposure to heat indices above 88 degrees Fahrenheit" and various academic and agency sources cited therein, ROA.11355–356, and that the Fifth Circuit and other district courts therein have repeatedly

13

relied on Dr. Vassallo's expertise to make similar findings, ROA.11356. It also underscored again that "[a] Heat Alert threshold of 88 degrees Fahrenheit is also well-supported in the law—numerous courts have found that a heat index of 88 degrees Fahrenheit or higher poses a substantial risk of adverse health outcomes." ROA.11356. Thus, the district court found that "successive injunctive relief [wa]s warranted regarding the Heat Alert threshold" in order "[t]o protect human health and safety." ROA.11356.

Noting that DOC had updated LSP's heat pathology policies to require hourly monitoring, the district court denied Plaintiffs' motion for an injunction requiring heat monitoring every 30 minutes. ROA.11350, 11355–356.

DOC immediately appealed. *See VOTE III.*[10]

**E.    *VOTE III***

On September 11, 2025, DOC moved to stay the August 2025 Order pending appeal and to expedite this appeal. *VOTE III*, ECF Nos. 42 (the "Stay Motion" or "Stay Mtn."), 41. In support of its Stay Motion, DOC

---

[10] *VOTE III* refers to appellate docket *Voice of the Experienced* v. *LeBlanc*, No. 25-30478 (5th Cir.).

argued that the August 2025 Order violates the PLRA because it: (i) issued a successive injunction, which DOC argued is impermissible under the PLRA; and (ii) does not contain certain findings as to the relief ordered, which DOC argued were required. *Id.* On September 17, 2025, the motions panel granted DOC's Stay Motion, without elaboration. *VOTE III*, ECF No. 59 (Smith, Haynes, Oldham, JJ.).[11] The August 2025 Order is set to expire under the PLRA on November 20, 2025. *See* ROA.11350, 11356–357.

---

[11] Judge Haynes would have "only grant[ed] a temporary stay on the August 22 injunction and would [have sent] it to the merits panel getting the expedited appeal to decide the issue." *VOTE III*, ECF No. 59 n.1.

## SUMMARY OF THE ARGUMENT

The August 2025 Order does nothing more than require DOC to temporarily revert to its longstanding, historic practice of calling a Heat Alert on the Farm Line when the heat index reaches or exceeds 88°F. In issuing that relief, the district court credited "extensive" expert witness testimony that a failure to call a Heat Alert—the trigger for all meaningful heat protections—at a heat index of 88°F exposes men on the Farm Line to a substantial risk of bodily harm—even death—that increases almost exponentially with each additional degree above that threshold. Based on extensive record evidence, the district court also found that DOC was aware of and disregarded those risks when it arbitrarily raised the Heat Alert threshold to 91°F in the middle of this now years-long litigation.

DOC does not appear to contest these findings as to Plaintiffs' likelihood of success on the merits of their Eighth Amendment claim, findings which are in no way clearly erroneous. DOC instead challenges the August 2025 Order as noncompliant with the PLRA based on a wholly atextual reading of that statute. Thus, DOC argues that the district court: (1) was forbidden from issuing a successive preliminary injunction

in a PLRA case; and (2) failed to make certain findings that DOC claims the PLRA requires.  Both arguments are meritless.

Nothing in the text of the PLRA places any limit on the number of times a district court can issue preliminary injunctive relief; no court of appeals has interpreted the PLRA to prohibit successive injunctions; and several courts have expressly or implicitly endorsed the availability of successive injunctions, including those that order overlapping relief, under the PLRA.

Nor does subsection 3626(a)(2) of the PLRA—which governs preliminary injunctions—require a district court to make findings that the preliminary injunctive relief issued is narrow, necessary, and the least intrusive possible, as it does for "final" relief.  The relief granted in the August 2025 Order clearly satisfies the requirements that the PLRA actually does impose for preliminary injunctions:  it is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief and is the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Accordingly, the August 2025 Order must be affirmed.

## STANDARD OF REVIEW

A district court's issuance of preliminary injunctive relief is reviewed for abuse of discretion. *See Janvey* v. *Alguire*, 647 F.3d 585, 591–92 (5th Cir. 2011). Under that standard, the reviewing court may not reverse simply because it "might have decided the matter differently." *Neal* v. *Sky Chefs, Inc.*, 39 F.3d 321, *3 (5th Cir. 1994). Rather, "[a] court abuses its discretion when it acts in an unreasonable or arbitrary manner . . . without reference to any guiding rules and principles." *United States* v. *M/Y Galactica Star*, 13 F.4th 448, 453 (5th Cir. 2021) (internal quotation marks omitted).

The district court's findings of fact are reviewed only for clear error, *see Janvey*, 647 F.3d at 592, and may be reversed only if the court of appeals "is left with a 'definite and firm conviction that a mistake has been committed.'" *Brown* v. *Plata*, 563 U.S. 493, 513 (2011) (quoting *Anderson* v. *City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)); *see also Guzman* v. *Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (noting that factual findings resting on credibility determinations by the district court "are entitled to even greater deference").

# ARGUMENT

In their Stay Motion, DOC tellingly made no attempt to challenge the district court's finding that Plaintiffs are likely to succeed on the merits of their underlying Eighth Amendment claim, nor the district court's irreparable harm finding or balance of the equities finding. *See generally* Stay Mtn. Indeed, Plaintiffs' entitlement to preliminary injunctive relief does not appear to be disputed in this appeal.[12]

DOC instead focuses on what it claims are the PLRA's requirements for preliminary injunctions, advancing unsustainable interpretations of that statute in arguing that the district court (1) is barred from issuing successive preliminary injunctions over the lifetime of a prison litigation, and (2) failed to make certain "findings" that the statutory text does not require for an initial grant of preliminary—as opposed to "final"—relief. *See generally* Stay Mtn. Neither of DOC's arguments is supported by the PLRA's plain text, statutory structure, or legislative history, nor by the relevant case law.

---

[12] Given the expedited nature of this appeal and simultaneous briefing schedule, Plaintiffs respectfully reserve the right to respond in their reply brief and at oral argument to any argument raised in DOC's submissions.

*First*, successive preliminary injunctions are permissible under the PLRA, and DOC's attempt to mischaracterize the August 2025 Order as an extension of the prior injunction is disingenuous.  *Second*, the PLRA does not require any particular findings that preliminary relief is necessary, narrow, and non-intrusive; it demands only that the relief ordered "must be" those things.  18 U.S.C. § 3626(a)(2).  The relief in the August 2025 Order—that solely with respect to the Farm Line, DOC temporarily return to the Heat Alert threshold it has followed for years— easily satisfies that requirement.

## I.   THE PLRA PERMITS SUCCESSIVE PRELIMINARY INJUNCTIONS.

The district court's entry of the August 2025 Order was not an abuse of discretion.  Recognizing that the May 2025 Order had expired, ROA.11351, 11352, the district court expressly concluded that the conditions warranting preliminary relief persisted, and it issued a new, separate injunction to temporarily remediate the constitutional violation stemming from those conditions.  ROA.11352.  Although DOC, in prior filings, has suggested that the August 2025 Order was an improper extension of the May 2025 Order, DOC, Plaintiffs, and the district court all agree that the May 2025 Order had already expired and had no

further force or effect at the time the August 2025 Order issued. ROA.11350, 11351, 11353–355. The August 2025 Order did not revive the prior expired injunction; it granted a new and distinct "successive preliminary injunction." ROA.11353. That grant was entirely proper.

## A. The District Court Acted Within Its Authority in Granting a Successive Injunction.

Preliminary injunctive relief under the PLRA is governed by 18 U.S.C. subsection 3626(a)(2), which provides that orders for preliminary relief "shall automatically expire on the date 90 days after its entry" unless certain conditions are met. 18. U.S.C. § 3626(a)(2). The plain text of subsection 3626(a)(2) places no restriction on the number of orders for preliminary injunctive relief that a district court may issue. Nor does any other section of the PLRA. Accordingly, a district court is free to exercise its equitable authority to grant multiple preliminary injunctions so long as the criteria for such relief are met. *See id.* ("In any civil action with respect to prison conditions, *to the extent otherwise authorized by law*, the court may enter a temporary restraining order or an order for preliminary injunctive relief.") (emphasis added); *see also Califano* v. *Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to

the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.").

*Every* federal court of appeals that has addressed the question of whether successive preliminary injunctions are permissible under the PLRA has reached the same conclusion: they are.   Nearly a quarter-century ago, in *Mayweathers* v. *Newland*, 258 F.3d 930, 936 (9th Cir. 2001), the Ninth Circuit held that "[n]othing in the [PLRA] limits the number of times a court may enter preliminary relief.  If anything, the provision simply imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted."   *Id.* (upholding identical successive preliminary injunction issued after first expired).  And in a subsequent decision, the Ninth Circuit squarely upheld a second order for preliminary relief in which the "district court, incorporating its previous findings, renewed the injunction." *Edmo* v. *Corizon, Inc.*, 935 F.3d 757, 783 n.12 (9th Cir. 2019).

The Seventh Circuit has reached the same conclusion.   In *Monroe* v. *Bowman*, 122 F.4th 688 (7th Cir. 2024), that court confronted a collection of preliminary orders that had long passed the 90-day limit.  But as the panel explained, its "enforcement" of the 90-day limit through

dismissal of the appeal did not "mean that the case is over." *Id*. at 697. Rather, if "plaintiffs believe . . . that defendants have been continuing to violate their Eighth Amendment rights, they may ask the district court for a new injunction, preliminary or permanent." *Id*. (citing *Mayweathers*, 258 F.3d at 936).

Two other federal courts of appeals have likewise permitted successive preliminary injunctions to stand, albeit it in nonprecedential decisions. In *Alloway* v. *Hodge*, 72 F. App'x 812 (2003), the Tenth Circuit relied on *Mayweathers* to conclude that "[n]othing in the PLRA limits the number of times a court may enter preliminary relief." *Id*. at 817. And the Eleventh Circuit similarly affirmed a successive preliminary injunction ordering overlapping relief to the first preliminary injunction after it expired. *See Melendez* v. *Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *21 (11th Cir. Apr. 15, 2022). [13]

---

[13] District courts presented with this issue are in accord. *See, e.g.*, *Robinson* v. *Labrador*, No. 1:24-cv-00306-DCN, 2024 WL 4953686, at *7 (D. Idaho Dec. 3, 2024) (granting second preliminary injunction under the PLRA because plaintiffs had "show[n] that such relief is still warranted" and the relief complied with the PLRA's "needs-narrowness-intrusiveness requirement"); *Ross* v. *Johnson*, No. 2:22-cv-00259-CDS-VCF, 2023 WL 3864995, at *2 (D. Nev. June 6, 2023) ("Because I find that the injunctive relief I previously ordered still comports with this Circuit's standards for the need, narrowness, and intrusiveness of injunctive relief under the PLRA, I hereby renew my prior injunction.").

Finally, while the Fifth Circuit has not squarely addressed the permissibility of successive preliminary injunctions under the PLRA, it has upheld multiple injunctions entered in the same litigation. *See Gates* v. *Cook*, 376 F.3d 323, 344 (5th Cir. 2004) (affirming three injunctions). And at least one district court in the Fifth Circuit has issued a successive preliminary injunction covering the same relief as the first. *See* Memorandum and Order at 2, *Cole* v. *Collier*, No. 4:14-cv-01698 (S.D. Tex. Oct. 12, 2017), ECF No. 854 (issuing identical, successive injunctive relief requiring Texas prison to take specific actions to reduce dangerously hot conditions).

The district court's decision to enter a successive injunction here is thus consistent with both the statutory text and the great weight of precedent and practice nationwide.

## B. DOC Mischaracterizes the August 2025 Order and Advances an Untenable Interpretation of the PLRA.

DOC has previously sought to portray the August 2025 Order not as a new injunction, but as an extension of the expired May 2025 Order; DOC has then argued that the August 2025 Order is improper because it did not comply with the PLRA's requirements for extending a

preliminary injunction.[14]  *See* Stay Mtn. at 15.  This entire argument is a strawman premised on a mischaracterization of the August 2025 Order. The August 2025 Order did not purport to extend, make "final," make permanent, or otherwise revive the May 2025 Order.   Instead, it expressly granted a new, successive preliminary injunction.  ROA.11353.

In addition to mischaracterizing the facts, DOC's contention that the PLRA prohibits successive injunctions like the one at issue here carries grave practical implications.  Under DOC's view, state officials found likely to be deliberately indifferent to a substantial risk of serious harm to human health cannot be obligated to ameliorate that risk for more than 90 days absent a full trial and ruling on the merits.  Following that initial relief, DOC has argued, state officials are left free to continue violating the constitutional rights of incarcerated individuals unless and

---

[14] DOC has cited to cases interpreting the PLRA's language permitting an extension of a preliminary injunction beyond 90 days only when a district court "makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final." 18 U.S.C. § 3626(a)(2).  *See* Stay Mtn. at 14, 16–17 (citing *Georgia Advocacy Off.* v. *Jackson*, 4 F.4th 1200, 1211 (11th Cir. 2021), *vacated following settlement by* 33 F.4th 1325 (2022); *Banks* v. *Booth*, 3 F.4th 445 (D.C. Cir. 2021)).  These cases are entirely inapposite, however, because they concern the requirements for converting a 90-day preliminary injunction into a "final" order— a question not at issue here—and do not address the actual question at issue in this appeal, namely whether successive 90-day preliminary injunctions are permissible.  *See Georgia Advocacy*, 4 F.4th at 1211; *Banks*, 3 F.4th at 448.

until the district court is able to conduct a trial and enter a permanent injunction. *See* Stay Mtn. at 14–17. Nothing in the text of the PLRA requires such a perverse limitation on a district court's equitable powers.

Moreover, the availability of successive orders for preliminary injunctive relief does not, as DOC has previously argued, render the 90-day expiration date in subsection 3626(a)(2) meaningless. That preliminary relief must expire after 90 days serves the important function of mandating periodic review of whether current conditions continue to warrant temporary relief while the court and the parties prepare for trial. Such reevaluation places the burden of proving entitlement to preliminary relief on a plaintiff every 90 days, consistent with the Supreme Court's directive that a finding of deliberate indifference must be "determined in light of prison authorities' current attitudes and conduct." *Farmer* v. *Brennan*, 511 U.S. 825, 827 (1994) (internal citation omitted). Because the district court properly concluded that the factual and legal requirements for preliminary injunctive relief were met as of August 22, its entry of a successive preliminary injunction for a period of 90 days was wholly permissible under the PLRA.

## II. THE AUGUST 2025 ORDER SATISFIES THE PLRA'S REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

### A. The August 2025 Order Is Necessary, Narrow, and Non-Intrusive.

18 U.S.C. § 3626(a)(2) governs "preliminary injunctive relief" issued under the PLRA. It requires that any such relief "must be narrowly drawn, extend no further than necessary to correct the *harm* the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2) (emphasis added). The August 2025 Order—a preliminary injunction of 90-day duration— is subject to and readily satisfies the requirements of subsection 3626(a)(2).

*First*, the relief ordered was necessary: having concluded that "none of the material facts underlying the May 23 Ruling have changed, nor has the necessity of the relief the Court ordered," ROA.11352, the district court incorporated its prior, thorough analysis identifying clear "harm requir[ing] preliminary relief" in the form of a likely Eighth Amendment violation, 18 U.S.C. § 3626(a)(2). Specifically, under DOC's policies as of August 2025, the district court found that "incarcerated persons working on the Farm Line at LSP will not receive medically significant protections until a Heat Alert is called at a heat index of 91

27

degrees Fahrenheit." *See* ROA.11352 (quoting May 2025 Order at ROA.10233). It further found that DOC had "likely been deliberately indifferent to such risks, increasing the Heat Alert threshold from 88 to 91 degrees Fahrenheit after the Court placed DOC on notice that they must improve conditions on the Farm Line at LSP to preserve human health and safety." *Id.* The district court accordingly found that preliminarily enjoining DOC to issue a Heat Alert at a heat index of 88°F was necessary to remedy the likely constitutional violation. ROA.11355–356 (holding that the relief ordered continues to be crucial "[t]o protect human health and safety," based on evidence presented during an evidentiary hearing, including live testimony from thermoregulation expert Dr. Susi Vassallo, supporting "the necessity of the 88 degree Fahrenheit Heat Alert threshold"); *see also id.* at ROA.11356 ("A Heat Alert threshold of 88 degrees Fahrenheit is also well-supported in the law—numerous courts have found that a heat index of 88 degrees Fahrenheit or higher poses a substantial risk of adverse health outcomes.").

*Second,* the mandate that DOC return to a Heat Alert threshold of 88°F solely with respect to the Farm Line was sufficiently narrow to

satisfy subsection 3626(a)(2).    Under the PLRA, "narrow tailoring requires a fit between the remedy's ends and the means chosen to accomplish those ends." *Brown*, 563 U.S. at 531 (cleaned up).  A motions panel of this Court has previously indicated that preliminary injunctive relief that is limited to heat precautions on the Farm Line at LSP satisfies the PLRA's "narrowness" requirement.  *See* ROA.7355, 7360. The district court was careful to limit the August 2025 Order accordingly, explicitly limiting the narrow relief it ordered solely to the Farm Line. ROA.11357 (ordering "that Defendants shall issue a 'Heat Alert' on the Farm Line at LSP whenever the heat index meets or exceeds 88 degrees Fahrenheit").[15]

*Third*, the relief ordered is no more intrusive than necessary to address the harm that arises from unmitigated exposure to heat indices over 88°F.  While the PLRA requires injunctive relief to be the "least intrusive means necessary to correct [the] harm," 18 U.S.C. § 3626(a)(2), courts also recognize that even remedies that reach deeply into the

---

[15] Without conceding that such a requirement would be overbroad, Plaintiffs note that the district court did not reissue the requirement in the May 2025 Order that DOC monitor the heat index every thirty minutes, further demonstrating that the August 2025 Order was as narrow and non-intrusive as possible to remedy the harm the court identified.  ROA.11356.

operations of penal institutions are sometimes necessary to correct constitutional violations, *see Brown*, 563 U.S. at 545 (affirming order requiring California to reduce overcrowding in its prisons). The district court found, based on "extensive testimony during an evidentiary hearing," that Plaintiffs face a serious risk of bodily harm from being forced to labor on the Farm Line in heat indices exceeding 88°F without the protections attendant in a Heat Alert. ROA.11352. The district court ordered DOC to call a Heat Alert at 88°F, ROA.11357, a rule that DOC itself promulgated and followed for years, ROA.1076–077, 6188, and the district court noted that "numerous courts" have also found "a heat index of 88 degrees Fahrenheit or higher poses a substantial risk of adverse health outcomes," ROA.11356 (citing ROA.10229–230). There is no less intrusive means of ensuring that men on the Farm Line are not exposed to heat indices exceeding the scientifically supported danger threshold without meaningful heat protections than ordering DOC to implement those protections at that scientifically supported threshold.

**B.    The District Court Is Not Required to Make Subsection 3626(a)(1) "Findings" when Issuing a Preliminary Injunction Pursuant to Subsection 3626(a)(2).**

Unable to dispute that the August 2025 Order is sufficiently necessary, narrow, and non-intrusive to satisfy subsection 3626(a)(2), DOC attempts to import requirements from other parts of the PLRA, arguing that the August 2025 Order is "unlawful" because it "did not 'make the findings required under subsection (a)(1).'"  Stay Mtn. at 15 (quoting 18 U.S.C. § 3626(a)(2)).   In fact, the findings requirements applicable to "prospective relief" in subsection 3626(a)(1) are inapplicable to a 90-day grant of preliminary injunctive relief, like the August 2025 Order, issued under subsection 3626(a)(2).   DOC's contrary argument ignores the text, structure, and legislative history of the PLRA, all of which treat "preliminary injunctive relief" under subsection (a)(2) as having distinct purposes and requirements compared to the more general category of "prospective relief" under (a)(1).

> 1.    *The Text and Structure of the PLRA Make Clear That Subsection 3626(a)(1)'s Requirements Do Not Apply to the August 2025 Order.*

Subsection 3626(a)(1), which broadly governs "Prospective Relief" under the PLRA, expressly requires that a district court "not grant or approve any prospective relief unless the court *finds* that such relief is

narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A) (emphasis added).

By contrast, subsection 3626(a)(2), which specifically governs "Preliminary Injunctive Relief" granted under the PLRA, contains no such requirement. 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief *must be* narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm") (emphasis added).

Under the final sentence of subsection (a)(2), the requirements of subsection (a)(1)—including the requirement that the district court make need, narrowness, non-intrusiveness findings—become applicable if, and only if, a court seeks to make a preliminary injunction "final." 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period."). Thus, while no need, narrowness, non-intrusiveness findings

32

are required for the issuance of a 90-day preliminary injunction in the first instance, such findings are required if the court subsequently seeks to make that preliminary relief "final." 18 U.S.C. §§ 3626(a)(1)–(2).

As discussed, *supra*, section I, the August 2025 Order did not seek to or make the May 2025 Order "final." *See* ROA.11351 (acknowledging that the May 2025 Order had expired). Rather, it granted a new, successive injunction that is set to expire as a matter of law on November 20, 2025. ROA.11351–352. Plaintiffs have not since asked the district court to "make the [August 2025 O]rder final" or issue a permanent injunction within that 90-day period. Nor do they intend to. Trial is scheduled to begin in early February 2026, and a final decision on the merits is anticipated before high heat conditions return next year. Accordingly, neither the final sentence of subsection 3626(a)(2) nor the "findings" requirement of subsection 3626(a)(1) are implicated by the August 2025 Order.

DOC has previously argued that preliminary injunctions are subject to the "findings" requirements set out in subsection 3626(a)(1) in the first instance, not only when that relief is being converted into "final" or "prospective" relief. *See, e.g.*, *VOTE II*, ECF No. 32 at 3 (Appellants'

Opening Brief); Stay Mtn. at 2. In essence—DOC implies that all "preliminary" relief must also satisfy the requirements for "prospective" relief under the statute. That argument cannot be reconciled with the plain text and structure of the statute as a whole, which make clear that "preliminary" and "prospective" relief are distinct categories of relief subject to different requirements. *See Texas* v. *Trump*, 127 F.4th 606, 611 (5th Cir. 2025), *vacated on other grounds*, No. 23-40671, 2025 WL 968277 (5th Cir. Mar. 28, 2025) ("Because statutory language 'cannot be interpreted apart from context,' it is necessary to examine 'the structure and language of the statute as a whole.") (internal citations omitted).

As discussed above, with respect to the precise question at issue here, the language of subsection (a)(1) meaningfully differs from that found in subsection (a)(2). Subsection (a)(1) expressly requires that a district court "find" that relief ordered is narrow, necessary, and least intrusive; subsection (a)(2) contains no such language. DOC's reading of these provisions would improperly require this Court to conclude "that the differing language in the two subsections has the same meaning in each." *Russello* v. *United States*, 464 U.S. 16, 23 (1983).

34

Additionally, the various requirements for prospective relief under subsection (a)(1) make no sense in the context of preliminary relief under subsection (a)(2). *See King* v. *Burwell*, 576 U.S. 473, 497 (2015) ("while the meaning of [a statutory] phrase may seem plain when viewed in isolation," it should be rejected if "such a reading turns out to be untenable in light of the statute as a whole.") (cleaned up).

*First*, were this Court to impose a requirement that preliminary injunctive relief under (a)(2) also include the (a)(1) need, narrowness, non-intrusiveness findings, it would obviate the PLRA's clear two-step procedure for converting preliminary relief into "final" relief established in the last sentence of subsection (a)(2). *See Davis* v. *Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). A preliminary injunction issued under subsection (a)(2) expires automatically after 90 days, unless a court makes requisite subsection (a)(1) "findings" and makes the order "final" before that expiration. However, if the subsection (a)(1) "findings" are required in the first instance, the last sentence of subsection (a)(2), which provides the

structure for converting a 90-day grant of preliminary relief into final relief, would be rendered superfluous. *See Pulsifer* v. *United States*, 601 U.S. 124, 143 (2024) (holding that the canon against surplusage applies with special force whenever a statutory construction renders an entire provision of a statute meaningless).

*Second*, subsection (a)(1) requires findings that particular relief is necessary to correct a *"violation of the Federal right."* 18 U.S.C. § 3626(a)(1) (emphasis added). No such finding is made at the preliminary injunction phase. *Amoco Prod. Co.* v. *Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) (explaining that, in contrast to a permanent injunction where "actual success" on the merits is required, the proponent of a preliminary injunction must only show a "likelihood of success on the merits").

*Third*, Defendants' attempt to collapse the distinction between ongoing, or "prospective" relief, and temporary "preliminary" relief ignores the different intended durational limits and termination procedures applicable to each. For example, subsection 3626(b) establishes mechanisms for litigants to seek the termination of prospective relief imposed under subsection (a)(1), often after a period of

years. Subsection (a)(2) provides a separate rule for the termination of preliminary relief: all such relief automatically expires after 90 days. These differing structures further support that "prospective" relief under (a)(1) and "preliminary" relief under (a)(2) are distinct categories of relief subject to separate rules, such that all parts of Section 3626 have independent, logical meaning.

*Finally*, to the extent DOC argues that preliminary injunctive relief is a subset of prospective relief and thus that subsection (a)(1) and subsection (a)(2) both govern preliminary injunctions, that argument violates the principle of *lex specialis*: where a general provision and a specific provision purporting to bear on the same subject are in conflict, the specific provision controls. *See Matter of Nobleman*, 968 F.2d 483, 488 (5th Cir. 1992), *aff'd sub nom. Nobelman* v. *Am. Sav. Bank*, 508 U.S. 324 (1993) ("If two statutes conflict, a generally accepted tenet of statutory construction is that the general language of a statute does not 'prevail over matters specifically dealt with in another part of the same enactment.'"); *Landmark Land Co.* v. *Off. of Thrift Supervision*, 948 F.2d 910, 912 (5th Cir. 1991) ("One answer to this dilemma is that we apply the basic principle of statutory construction that '[a] specific provision

controls over one of more general application.'") (quoting *Gozlon–Peretz* v. *United States*, 498 U.S. 395, 396 (1991)).

> **2.** *The PLRA's Legislative History Confirms That Subsection 3626(a)(1)'s "Findings" Requirements Do Not Apply to the August 2025 Order.*

The legislative history of the PLRA likewise confirms that it was not Congress's intent to require the "findings" applicable to prospective relief for preliminary injunctions. *See Perrone* v. *Gen. Motors Acceptance Corp.*, 232 F.3d 433, 440 (5th Cir. 2000) (citing legislative history as it "appears to support" party's text-based arguments). Subsection (a)(2) was introduced only after commenters raised concerns that the statute's initial proposal—which only included a provision for "prospective relief" that mirrors (a)(1)(A) today—would not allow for temporary, emergency relief because the requirements for prospective relief would require a "full-blown hearing" and a "find[ing of] a violation of law," neither of which is a requirement for a preliminary injunction. *See Prison Reform: Enhancing the Effectiveness of Incarceration: Hearing on S. 3, S. 38, S. 400, S. 866, S. 930, and H.R. 667 Before the S. Comm. on the Judiciary*, 104th Cong. 104-573, at 63, 75–76, 214 (1995) (Prepared statements of Robert J. Watson, Steve J. Martin, and Chase Riveland, respectively);

*Prison Conditions Litigation Reform Act*, S. 1275, 104th Cong. § (a)(2)
(1995) (introducing new bill, S. 1275 ("Senate Bill 1275"), that included
subsection 3626(a)(2) "Preliminary Injunctive Relief" for the first time,
following prior Senate Judiciary Committee hearing).

The legislative history also rebuts any argument that preliminary
injunctive relief must be a subset of prospective relief as the latter term
is defined in subsection (g)(7). *See Victory* v. *Berks Cnty.*, 789 F. App'x
328, 333 n.8 (3d Cir. 2019). Subsection (g)(7) states that "the term
'prospective relief ' means all relief other than compensatory monetary
damages." However, at the time subsection (g)(7) was drafted, Congress
did not have preliminary injunctive relief in mind, as that broad
definition predates the addition of subsection (a)(2) to the statute. *See*
Senate Bill 1275. To the contrary, that the provision for preliminary
injunctive relief was later tacked on to the statute and included all of its
own provisions for granting, terminating, and extending preliminary
injunctive relief strongly suggests that Congress viewed preliminary
injunctions as something separate and apart from prospective relief.

The differences in the plain language of subsection 3626(a)(1)(A)
and subsection (a)(2), respectively, reflect intentional Congressional

choices to set forth a separate, less stringent standard for issuing a PLRA preliminary injunction than for other prospective relief under the statute in order to accommodate the temporary and preliminary nature of such relief.

## CONCLUSION

For the foregoing reasons, this Court should deny DOC's appeal and affirm the August 2025 Order.

Respectfully submitted,

/S/ *Jeremy A. Benjamin*

**PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP**
JOSHUA HILL JR.
JEREMY A. BENJAMIN
LEAH R. WEISER
CHIZOBA D. WILKERSON
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990
*jhill@paulweiss.com*
*jbenjamin@paulweiss.com*
*lweiser@paulweiss.com*
*cwilkerson@paulweiss.com*

KIMBERLY GRAMBO
2001 K Street, NW
Washington, D.C. 20006-1047
Tel:  (202) 223-7300
Fax:  (202) 223-7420
*kgrambo@paulweiss.com*

ANNA M. STAPLETON
535 Mission Street, 25th Floor
San Francisco, CA 94105
Tel:  (628) 432-5100
Fax:  (628) 232-3101
*astapleton@paulweiss.com*

THE PROMISE OF JUSTICE
  INITIATIVE
SAMANTHA POURCIAU
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel:  (504) 529-5955
*sbosalavage@defendla.org*

**RIGHTS BEHIND BARS**
LYDIA WRIGHT
1800 M St. NW
Fnt. 1 #33821
Washington, D.C. 20033
Tel:  (202) 455-4399
*lydia@rightsbehindbars.org*

*ATTORNEYS FOR PLAINTIFFS-
APPELLEES AND THE PROPOSED
CLASSES*

OCTOBER 20, 2025

**CERTIFICATE OF SERVICE**

I, Jeremy A. Benjamin, a member of the Bar of this Court and counsel for Plaintiffs-Appellees, certify that, on October 20, 2025, a copy of Plaintiffs-Appellees' Opening Brief was filed with the Clerk through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ *Jeremy A. Benjamin*
JEREMY A. BENJAMIN

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Jeremy A. Benjamin, a member of the Bar of this Court and counsel for Plaintiffs-Appellees, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Fifth Circuit Rule 32, that Plaintiffs-Appellees' Opening Brief is proportionately spaced, has a typeface of 14 points or more, excluding footnotes, which are in 12 point proportionally spaced typeface, and contains 7,514 words.

*/s/ Jeremy A. Benjamin*
JEREMY A. BENJAMIN

OCTOBER 20, 2025