No. 25-30478

# In the United States Court of Appeals for the Fifth Circuit

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF ITSELF AND ITS MEMBERS; MYRON SMITH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NATE WALKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DARRIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; ALVIN WILLIAMS,
*Plaintiffs-Appellees*

v.

JAMES M. LEBLANC, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY; LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
*Defendants-Appellants*

————————————

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 23-cv-1304, Hon. Brian A. Jackson

————————————

## APPELLANTS' REPLY BRIEF

————————————

*(Counsel listed on inside cover)*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

CAITLIN HUETTEMANN
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
HuettemannC@ag.louisiana.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iv

INTRODUCTION .................................................................................. 1

ARGUMENT ........................................................................................ 5

I.    REVERSAL IS WARRANTED BECAUSE THE AUGUST 22 ORDER
      IS AN IMPERMISSIBLE EXTENSION OF THE *VOTE II* ORDER ................. 5

II.   REVERSAL IS WARRANTED BECAUSE THE AUGUST 22 ORDER
      DOES NOT CONTAIN THE PLRA-REQUIRED FINDINGS. ...................... 10

III.  REVERSAL IS WARRANTED BECAUSE THE AUGUST 22 ORDER
      MISAPPLIES THE EIGHTH AMENDMENT AND RUNS AFOUL OF
      THE PLRA. ................................................................................ 13

CONCLUSION .................................................................................. 17

CERTIFICATE OF SERVICE ................................................................ 18

CERTIFICATE OF COMPLIANCE ........................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                  **Page(s)**

*Banks v. Booth*,
  3 F.4th 445 (D.C. Cir. 2021) ................................................................ 6

*Ga. Advoc. Off. v. Jackson*,
  4 F.4th 1200 (11th Cir. 2021), *vacated on settlement
  grounds*, 33 F.4th 1325 (11th Cir. 2022) .................................... *passim*

*Hare v. City of Corinth*,
  74 F.3d 633 (5th Cir. 1996) ............................................................... 14

*Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*,
  7 F.4th 315 (5th Cir. 2021) ............................................................... 11

*Mayweathers v. Newland*,
  258 F.3d 930 (9th Cir. 2001) ............................................................... 9

*Miller v. French*,
  530 U.S. 327 (2000) ............................................................................ 7

*United States v. Hinds Cnty. Bd. of Supervisors*,
  128 F.4th 616 (5th Cir. 2025) ...................................................... 3, 10

*Valentine v. Collier*,
  956 F.3d 797 (5th Cir. 2020) ............................................................. 15

*Valentine v. Collier*,
  978 F.3d 154 (5th Cir. 2020) ............................................................... 1

*Voice of the Experienced v. Westcott*,
  No. 24-30420, 2025 WL 2222990 (5th Cir. Aug. 5, 2025)
  (per curiam) ....................................................................................... 5

**Statutes**

18 U.S.C. § 3626(a)(1)(A)................................................................. *passim*

**INTRODUCTION**

In its opening brief, the State expressed frustration with the fact that "we are litigating a district court's (duplicated) attempt to alter prison operations in a matter of degrees." State.Op.Br. at 42. Plaintiffs seem to believe that this micro-management demonstrates *compliance* with the Prison Litigation Reform Act ("PLRA"), not a *violation* of the PLRA. That is not a serious position—for it would turn the PLRA on its head by mandating the exact sort of micro-management that the PLRA was designed to prohibit.

This Court has minced no words: "[F]ederal judges are not policymakers." *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020). "The Constitution charges federal judges with deciding cases and controversies, not with running state prisons." *Id.* (citation omitted). Yet with the August 22 injunction, the district court violates both the PLRA and the Eighth Amendment to impose its preferences for prison operations on the State. That, this Court's precedent does not allow.

While Plaintiffs continue to claim (at 9) that Louisiana State Penitentiary ("LSP") has instituted "a new and substantially less protective Heat Alert policy" over the course of this litigation, such an

1

assertion is wildly misleading. Before this litigation, Farm Line prisoners did not enjoy shade wagons or covered pavilions. Now, however, each of those protections—and far more—are in place, and operate *regardless of the temperature outside*. Plaintiffs cannot seriously claim that these measures are "less protective" than the status quo ante. The sole basis for Plaintiffs' assertion that LSP has adopted "less protective" policies is that LSP increased its Heat Alert threshold from 88 degrees to 91 degrees Fahrenheit. The parties can dispute the merits of that amendment, but the Court should not tolerate Plaintiffs' repeated, across-the-board characterization of LSP as adopting "less protective" policies during this litigation—because it is flatly untrue.

Setting aside that mischaracterization, reversal of the August 22 Order remains appropriate for three core reasons.

*First*, the August 22 Order violates the PLRA's 90-day expiration period by using a so-called "successive injunction" to flout Congress's clearly placed limit on preliminary relief's reach in the prison reform context. As everyone agrees, the August 22 Order is identical in substance to the expired and vacated *VOTE II* injunction. *See, e.g.*, Pls.Op.Br. at 27. Yet the district court re-issued that relief, one day after

it expired, without any attempt to make the *VOTE II* relief "final," as required by the PLRA. 18 U.S.C. § 3626(a)(2). Sidestepping the 90-day expiration period in this manner blatantly contravenes the plain text and the purpose of the PLRA. Because neither statutory language nor overarching policy permit that workaround, this Court can summarily reverse on that basis alone.

*Second*, in entering the August 22 injunction, the district court nowhere acknowledged or tried to make "need-narrowness-intrusiveness findings" required under the PLRA. *United States v. Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 636 (5th Cir. 2025). In *Hinds County*, this Court reversed a district court's order that asserted those findings "in a conclusory manner and failed to give the necessary explanation and justification to support [them]." *Id.* at 639. This is an *a fortiori* case because the district court here did not even do that. The Court can reverse on that basis, too.

*Third*, if the Court reaches the merits, the district court, in deeming unconstitutional LSP's Heat Alert threshold of 91 degrees Fahrenheit, did not consider that threshold's interrelationship with the surrounding remedial measures that were contemporaneously implemented. That is

3

plain legal error because a district court must evaluate the reasonableness of a particular remedial measure within the much broader context of ongoing remedial measures. The district court did not do so, instead gerrymandering the Heat Alert threshold out of that broader context and asking whether that threshold in isolation demonstrates deliberate indifference. That mistake flies in the face of this Court's Eighth Amendment precedent and demands this Court's correction.

The August 22 Order turns the PLRA entirely upside down. Running a State's prison down to the degree is not judicial modesty or consistent with Congress's stated goals of circumscribing courts' equitable discretion in the prison context. The Court should summarily reverse the August 22 injunction order.

# ARGUMENT

## I.  REVERSAL IS WARRANTED BECAUSE THE AUGUST 22 ORDER IS AN IMPERMISSIBLE EXTENSION OF THE *VOTE II* ORDER.

No one disputes that the district court did not make, nor did Plaintiffs seek to make, the *VOTE II* order "final" before it expired under the PLRA. Plaintiffs likewise agree (at 20–21) that the *VOTE II* order "had no further force or effect at the time the August 2025 Order issued." That should have spelled the end of any and all relief contained in the *VOTE II* injunction. *See Voice of the Experienced v. Westcott*, No. 24-30420, 2025 WL 2222990, at *4 n.2 (5th Cir. Aug. 5, 2025) (per curiam) (where order is "expired" and "is now vacated," "it has no legal consequences in this litigation"). Yet the *VOTE II* injunction lives on— both its factual findings and legal conclusions—in the August 22 Order. That result renders meaningless the 90-day limit in the PLRA for preliminary injunctive relief and reflects a refusal to abide by the PLRA's limits on all prospective relief entered in prison reform cases.

The PLRA's 90-day expiration date for preliminary relief is clear: "Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the

order final before the expiration of the 90-day period." 18 U.S.C.
§ 3626(a)(2). As the text shows, a preliminary injunction in the prison
context cannot survive past 90 days unless the district court makes the
need-narrowness-intrusiveness findings and makes those findings in a
"final" order before the expiration of the 90-day period. *See, e.g.*, *Banks v.
Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021) ("[I]f a judge enters a preliminary
injunction in a suit covered by this section, that injunction will terminate
on its 90th day unless the court has rendered it permanent and made
specific findings ... ."). This is the only avenue under the PLRA to extend
prospective relief. Where the parties refuse to so extend the requested
relief, they cannot obtain indefinite preliminary relief by gaming the
system, as here.

Plaintiffs assert that, under their atextual understanding of (a)(2),
the 90-day expiration date can still "serve[] the important function of
mandating periodic review of whether current conditions continue to
warrant temporary relief while the court and the parties prepare for
trial." Pls.Op.Br. at 26. That reading, without support in the language of
the statute, misunderstands the purpose of placing a 90-day limit on
preliminary relief in the first place, and renders that limit meaningless.

6

And while Plaintiffs harp on the supposedly "grave practical implications" of prohibiting successive identical injunctions (at 25) and the resulting "perverse limitation on a district court's equitable powers" (at 26), they ignore the central purpose of the PLRA—to curb courts' equitable powers and provide for prospective relief only under very limited circumstances. *See Miller v. French*, 530 U.S. 327, 330 (2000) ("[C]urbing the equitable discretion of district courts was one of the PLRA's principal objectives.").

As the Eleventh Circuit explained it, "the PLRA alters the landscape for injunctions in prison cases." *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021), *vacated on settlement grounds*, 33 F.4th 1325 (11th Cir. 2022). While "preliminary injunctions are typically effective until a decision has been reached at a trial on the merits," "[a] preliminary injunction under the PLRA [] may or may not last until a final decision on the merits is made." *Id.* (citation omitted). "Its lifespan is instead predetermined by the 'unless' clause—it will automatically expire 90 days after its entry unless certain conditions are met, one of

which ... is the entry of a permanent injunction after a trial on the merits." *Id.*

That strict time boundary serves an important purpose: "[T]he PLRA's 90-day cap on preliminary injunctions limits the harmful effects of potentially unjustified or overbroad injunctions and expedites the lifecycle of prison cases. The PLRA thus subordinates the traditional function of preliminary injunctive relief—the prevention of injury pending a trial on the merits—to the PLRA's overarching goal of reducing judicial involvement in prison management." *Id.* at 1210. The "unless" clause thus "functions" "to create what is in effect a 90-day test period during which the necessity of permanent injunctive relief can be evaluated." *Id.* Sure, "90 days is a short amount of time to reach a final decision on the merits of a complex civil case about prison conditions. Nonetheless, that is what the text of § 3626(a)(2) calls for." *Id.* at 1215.

The Eleventh Circuit's textual analysis of the PLRA's 90-day period is the only one of its kind among the circuits. Plaintiffs allege (at 17) that "no court of appeals has interpreted the PLRA to prohibit successive injunctions" and cite (at 22–23) the same list of cases they have cited time and again in this litigation, where various courts have permitted

successive injunctions. Almost all of those cases are premised on the same Ninth Circuit opinion, *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001). With respect, that opinion conducts no textual analysis at all to reach its conclusion that "[n]othing in the statute limits the number of times a court may enter preliminary relief." That statement is divorced from the text, and assumes that silence speaks louder than the express 90-day limit and the "unless" clause contained in (a)(2). The Eleventh Circuit takes the better view: "the text of § 3626(a)(2) calls for" "a 90-day test period during which the necessity of permanent injunctive relief can be evaluated," *Jackson*, 4 F.4th at 1210, 1215—not endless preliminary injunctions stretching far past their 90-day shelf life.

In Plaintiffs' preferred world, a district court can just let relief expire for a day and then enter a new preliminary injunction granting the same relief—all without satisfying the PLRA's conditions for extending that relief: (1) making "the findings required under subsection (a)(1) for the entry of prospective relief" and (2) "mak[ing] the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2). And a district court is free to rinse and repeat as many times as it wishes, wholly disregarding the precise limitations Congress imposed on

prospective relief extending beyond 90 days. That is not how statutory interpretation works. This Court should resoundingly reject that result.

## II.  REVERSAL IS WARRANTED BECAUSE THE AUGUST 22 ORDER DOES NOT CONTAIN THE PLRA-REQUIRED FINDINGS.

There can also be no doubt that the district court did not make the need-narrowness-intrusiveness findings required under the PLRA before the issuance of any injunctive relief. Instead, Plaintiffs attempt (at 27–30) to locate those findings *themselves*, by extrapolating from the district court's sparse order, which itself conducts very little analysis at all. Of course, the district court, not the parties, must make those findings in the first instance. *See* 18 U.S.C. § 3626(a)(1)(A) ("*The court* shall not grant or approve any prospective relief unless the court finds...") (emphasis added). Without those express findings in the August 22 Order itself, the Order must be reversed. *See Hinds County*, 128 F.4th at 639 ("The district court asserted this finding in a conclusory manner and failed to give the necessary explanation and justification to support it.").

To combat this commonsense conclusion, Plaintiffs insist that the language used in (a)(1) (the court has to "find[]" that relief meets the requirements) and (a)(2) (the relief "must" meet the requirements) is vastly different, and that a district court need not make any findings at

10

all in a preliminary injunction entered under (a)(2). *See* Pls.Op.Br. at 31–40. "Of course, the problem with this is that § 3626(a)(1)(A) is unequivocal that '[t]he court *shall not grant or approve any prospective relief unless the court* [makes need-narrowness-intrusiveness findings].'" *Jackson*, 4 F.4th at 1213 (emphasis and alterations in original). "This language cannot be squared with an interpretation that allows district courts to issue 90-day injunctions and only requires need-narrowness-intrusiveness findings—or even a complete preliminary injunction order, for that matter—if the court wants the injunction to last longer." *Id.* In other words, preliminary injunctions are not an exception to the rule—they, like all "prospective relief" under the PLRA, are limited in scope to curb federal courts' equitable discretion in this arena.

More, § 3626(a)(1)(A) itself clearly states that a court "shall not grant or approve *any* prospective relief unless" it makes the required need-narrowness-intrusiveness findings. (emphasis added). That "any" qualifier indicates Congress's intent that *all* forms of prospective relief, including preliminary prospective relief, must meet the procedural requirements laid out in (a)(1)(A). *See Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 323 (5th Cir. 2021) ("'Any' has an expansive

11

meaning, that is, one or some indiscriminately of whatever kind.")
(cleaned up).

Plaintiffs also argue (at 35) that "were this Court to impose a
requirement that preliminary injunctive relief under (a)(2) also include
the (a)(1) need, narrowness, non-intrusiveness findings, it would obviate
the PLRA's clear two-step procedure for converting preliminary relief
into 'final' relief established in the last sentence of subsection (a)(2)." But
"[t]his argument fails to recognize that the 'unless' clause governs a
situation distinct from the one governed by § 3626(a)(1)." *Jackson*, 4
F.4th at 1215. "§ 3626(a)(1) governs the issuance of prospective relief in
the first instance, while § 3626(a)(2)'s 'unless' clause governs the
issuance of permanent injunctive relief when a preliminary injunction is
already in place." *Id.* "The 'unless' clause makes clear what § 3626(a)(1)
alone might have left ambiguous—that a court must make need-
narrowness-intrusiveness findings when it converts a preliminary
injunction into a permanent injunction, even if it already made those
findings when issuing the preliminary injunction initially." *Id.* Nothing
about that understanding renders the language superfluous.

In the August 22 Order—just as in the *VOTE II* injunction order—the district court refused even to acknowledge the § 3626(a) findings requirement, let alone purport to deem those findings satisfied. The Court should not tolerate that refusal to abide by the PLRA's mandates.

### III.  REVERSAL IS WARRANTED BECAUSE THE AUGUST 22 ORDER MISAPPLIES THE EIGHTH AMENDMENT AND RUNS AFOUL OF THE PLRA.

Oddly, Plaintiffs comment (at 19) that "tellingly," the State "made no attempt to challenge the district court's findings that Plaintiffs are likely to succeed on the merits of their underlying Eighth Amendment claim"—perhaps because such a discussion was unnecessary for the State to obtain a stay of the August 22 Order. *See* ECF 42 (State's motion to stay), ECF 59 (Order granting motion to stay). Of course, the State is not required to put forth every legal argument it has in a motion for stay pending appeal. The State briefed the merits at length in its opening brief, and thus any argument as to waiver is plainly groundless. *See* State.Op.Br. at 36–43.

If this Court reaches the merits, reversal is easy. The State's opening brief challenged the district court's determination that "issuing a Heat Alert at 91 degrees Fahrenheit is unconstitutional, and so LSP

officials must now issue a Heat Alert at 88 degrees Fahrenheit." *Id.* at 37. The State explained at length "the district court's fundamental misapprehension about how the Eighth Amendment analysis works in a case like this, in which a defendant is actively responding to alleged constitutional problems." *Id.* at 39–40. "In such cases, the subjective component of the deliberate-indifference inquiry must be 'satisfied [] in respect to the response itself.'" *Id.* at 40 (quoting *Hare v. City of Corinth*, 74 F.3d 633, 649 n.5 (5th Cir. 1996)).

If Plaintiffs continue to agree—as they have in the past, *see* Resp. Br., *VOTE II*, ECF 60—that (1) "the key question is whether [any remedial] measures are reasonable or adequate to eliminate the identified risk of serious harm," *id.* at 28, and (2) that question must be answered in light of the "much broader" context surrounding the remedial measures, *id.* at 60, then the district court's Heat Alert threshold holding cannot stand. Remember, "the State's amendment of the Heat Alert threshold did not occur in a vacuum, but rather alongside the construction of shade wagons and pavilions, the revision and expansion of a medications list, the revision and expansion of heat policies themselves, and the imposition of protective measures regardless

14

of the weather: (1) 15-minute rest periods every 45 minutes; (2) the ability to take breaks as needed; (3) access to shade, ice, and water, and cups for water; (4) access to sunscreen; and (5) access to appropriate clothing, gloves, and boots." State.Op.Br. at 40 (citing ROA.8510–11). The district court, however "gerrymander[ed] the Heat Alert threshold amendment out of that sweeping effort and deem[ed] it unconstitutional." *Id.* That is not a proper Eighth Amendment analysis, since "[t]he district court was [] required to assess the reasonableness of the collective response itself." *Id.* at 40; *see also Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (rejecting argument that "general awareness of the dangers" and a prison's responsive "measures" show deliberate indifference).

The common ground between the parties here is that the district court cannot just ignore the surrounding context. And that is precisely the problem: The district court did not ask or answer whether LSP's collective response rendered the corresponding Heat Alert threshold amendment reasonable. That is a fatal error.

One final point as to the merits: Plaintiffs have previously argued, that this case is about the district court's "credibility determinations"

regarding the various experts who gave testimony at the district court hearings—because this would allow them to hide behind the generalized notion that "credibility determinations following live testimony 'can virtually never be clear error'" *See* Resp. Br., *VOTE II*, ECF 60 at 47, 62. This is misdirection because, as Plaintiffs have noted, the State "do[es] not ... challenge [the district court's] credibility determinations." *Id.* at 47. The State very deliberately focused on purely legal errors committed by the district court. And this Court's resolution of those legal errors does not require any evaluation of the district court's overt effort to insulate its order from appellate review by loudly and repeatedly using the word "credibility."

As for the remaining harm and public-interest factors in a preliminary-injunction analysis, Plaintiffs will likely claim to win the game because "[i]t is always in the public interest to prevent impending violations of constitutional rights, and Appellants have no legitimate interest in maintaining the Farm Line in violation of the Constitution." *Id.* at 65. That entire argument, however, assumes that the district court's merits analysis survives scrutiny, which is plainly not true. *See* State.Op.Br. at 36–43.

## CONCLUSION

The Court should summarily reverse the August 22 Order.


Respectfully submitted,

Dated:    October 27, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Caitlin Huettemann*
J. BENJAMIN AGUIÑAGA
Solicitor General
CAITLIN HUETTEMANN
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
HuettemannC@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I certify that on October 27, 2025, I filed the foregoing brief with

the Court's CM/ECF system, which will automatically send an electronic

notice of filing to all counsel of record.


*/s/ Caitlin Huettemann*
CAITLIN HUETTEMANN

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 3133 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ Caitlin Huettemann*
CAITLIN HUETTEMANN

Dated:     October 27, 2025

19