# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
November 21, 2025
Lyle W. Cayce
Clerk

No. 25-30478

───────────

Voice of the Experienced, a membership organization *on behalf of itself and its members*; Myron Smith, *Individually and on behalf of all others similarly situated*; Damaris Jackson, *Individually and on behalf of all others similarly situated*; Nate Walker, *Individually and on behalf of all others similarly situated*; Darrius Williams, *Individually and on behalf of all others similarly situated*; Kevias Hicks; Joseph Guillory; Alvin Williams,

　　　　　　　　　　　　　　　　　　　　*Plaintiffs—Appellees*,

*versus*

James M. LeBlanc, *Secretary, Department of Public Safety and Corrections*; Tim Hooper, *Warden, Louisiana State Penitentiary*; Louisiana Department of Public Safety and Corrections,

　　　　　　　　　　　　　　　　　　　　*Defendants—Appellants*.

───────────

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:23-CV-1304

───────────

Before DAVIS, STEWART, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

This case involves the third issuance of preliminary relief requested by Voice of the Experienced and several Angola inmates (collectively, "VOTE") and granted by the district court in this matter, enjoining the Louisiana State Penitentiary (hereinafter "Angola") from certain practices on its Farm Line. Each of the first two temporary restraining orders ("TROs") were appealed by Louisiana's Department of Safety and Corrections ("DPSC"), the Secretary of DPSC, and the Warden of Angola (collectively, "Louisiana"). The first two TROs expired 90 days after entry under the Prison Reform Litigation Act ("PLRA") before the panels had an opportunity to rule on the merits. Accordingly, the first two panels dismissed their respective appeals as moot and vacated the underlying TROs under the *Munsingwear* doctrine.[1] *See Voice of the Experienced v. Westcott* ("*VOTE I*"), No. 24-30420, 2025 WL 2222990, at *1 (5th Cir. Aug. 5, 2025) (per curiam); *Voice of the Experienced v. LeBlanc* ("*VOTE II*"), No. 25-30322, 2025 WL 2481382, at *1–2 (5th Cir. Aug. 28, 2025) (per curiam).

Both parties agree that pursuant to the terms of the PLRA, the preliminary injunction underlying the instant appeal expired on November 20, 2025. Because November 20 has come and gone, the parties no longer have a legally cognizable interest in the instant appeal and there is no meaningful relief that this panel could order. Accordingly, we DISMISS the appeal as moot and VACATE the district court's August 2025 Order of preliminary relief.

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] *See United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

No. 25-30478

**I**[2]

**A**

The Farm Line is a practice through which Angola compels inmates incarcerated at its facility to perform hard labor. Incarcerated men assigned to the Farm Line pick vegetables by hand for hours under hot, strenuous conditions. In the high heat of the Louisiana summer, conditions on the Farm Line can become life threatening. So long as they do not have a medical exemption, any of the approximately 4,000 men incarcerated at Angola can potentially be assigned to the Farm Line for disciplinary reasons. In September 2023, VOTE filed a class action lawsuit challenging Angola's operation of the Farm Line as violating the Eighth Amendment's prohibition on cruel and unusual punishment. A five-day bench trial on the merits is scheduled to begin on February 3, 2026.

**B**

At the time VOTE's suit was filed, the procedure for heat alerts for work on the Farm Line was governed by a 2018 Policy promulgated by DPSC. The policy aimed to "establish provisions for the reduction of heat pathology and to reduce the exposure to inmates identified as more vulnerable to heat (the "2018 Policy"). The 2018 Policy directed DPSC to monitor the temperature every two hours and call "Heat Alerts" when "the apparent temperature (heat index) outdoors . . . exceeded 88 degrees Fahrenheit."[3] When a Heat Alert was announced at the 88-degree threshold,

---

[2] Portions of the facts and procedural history contained in subsections I.A and I.C are replicated from our previous opinion in *Voice of the Experienced v. LeBlanc*, No. 25-30322, 2025 WL 2481382 (5th Cir. Aug. 28, 2025).

[3] "The heat index, also known as the apparent temperature, is what the temperature feels like to the human body when relative humidity is combined with the air temperature." *What Is the Heat Index?*, NAT'L WEATHER SERV.,

No. 25-30478

DPSC was required to provide the following measures to inmates working outdoors: (1) water and ice at least every thirty minutes; and (2) a rest break of at least five minutes every thirty minutes. Additionally, when Heat Alerts were called, work hours could be adjusted to accommodate extreme temperatures. In 2019, Angola adopted Directive 13.067 (the "2019 Directive"), which was specific to Angola but required the same protections for Farm Line workers when the apparent temperature, measured every two hours, reached 88 degrees.

In May 2024, VOTE moved for a preliminary injunction and temporary restraining order. Attempting to get ahead of the ensuing summer months, VOTE requested that the district court immediately enjoin all agricultural labor performed by incarcerated persons on the Farm Line when the apparent temperature exceeded 88 degrees Fahrenheit. In July 2024, the district court granted VOTE's motion in part (the "2024 Order"). It declined to enjoin labor on the Farm Line altogether in 88-plus degree weather but entered a TRO requiring that Angola undertake the following measures to ensure prisoner safety:

1. Correct the deficiencies of [the 2019 Directive described in the court's order], including the lack of shade and adequate rest provided to incarcerated persons laboring on the Farm Line;

2. Correct the problems with [Angola's] equipment policies . . . , including the failure to provide sunscreen and other necessary protective clothing and equipment to those laboring on the Farm Line;

3. Submit a revised and expanded [] list [of medications exempting individuals from labor on the Farm Line];

https://www.weather.gov/ama/heatindex. The terms "heat index" and "apparent temperature" are used interchangeably herein.

4. Create a procedure to ensure that all incarcerated persons suffering from health conditions that significantly inhibit thermoregulation are assessed by medical personnel and are granted heat precaution duty status; and

5. Develop an additional heat-related policy to protect those laboring outdoors when heat index values reach or exceed 113 degrees Fahrenheit, the temperature at which the National Weather Service issues excessive heat warnings.

Louisiana petitioned the Fifth Circuit for a stay of the 2024 Order pending appeal. Hearing that petition, another panel of this court denied the stay of the 2024 Order's first two provisions, but granted a stay for the last three provisions. It reasoned that the last three provisions were overbroad because they appeared to reach beyond Angola to cover the entire Louisiana DPSC, rather than just inmates working on Angola's Farm Line. However, VOTE's proposed class consists only of Angola inmates who could be forced to perform agricultural labor, not all Louisiana inmates. By contrast, the motions panel noted that the first two provisions of the 2024 Order were targeted specifically at Angola's Farm Line, and thus held that those two provisions were not overbroad.

Both parties agreed that the district court's 2024 Order expired under the PLRA on September 30, 2024. *See* 18 U.S.C. § 3626(a)(2). Nevertheless, another panel of this court heard oral argument on the 2024 Order's propriety on April 30, 2025. On August 5, 2025, that panel issued a per curiam opinion finding the appeal moot and vacating the 2024 Order. *VOTE I*, 2025 WL 2222990, at *1.

## C

Meanwhile, in the wake of the 2024 Order, DPSC revised its heat policies in October of 2024 (the "2024 Policy"). Notably, it *raised* the threshold for issuance of a Heat Alert from 88 to 91 degrees Fahrenheit.

No. 25-30478

However, the 2024 Policy also provided for some of the mitigation measures contemplated by the 2024 Order. Specifically, it stated that "water and ice," "shaded areas for breaks" and "sunscreen" would be available to outdoor laborers at all times, regardless of the issuance of a Heat Alert. Although the 2024 Policy provided for monitoring of the temperature every two hours, a later Angola-specific Directive (the "2025 Directive") required hourly monitoring.[4]

In March 2025, VOTE moved for a TRO to require Angola to (1) issue a Heat Alert on the Farm Line whenever the heat index meets or exceeds 88 degrees and (2) monitor the heat index every 30 minutes. VOTE argued that it was likely to succeed on the merits of its Eighth Amendment claim regarding the Farm Line practices, and Appellants were deliberately indifferent to the alleged Eighth Amendment violations. VOTE argued that preliminary injunctive relief was necessary to "protect [inmates] on the Farm Line from heat-related injury." Among the evidence Appellees introduced in support of their motion were declarations from their own expert, Dr. Susi Vassallo ("Dr. Vassallo") and deposition testimony from DPSC's Chief Medical Officer, Dr. Randy Lavespere ("Dr. Lavespere").

Appellants opposed the motion, arguing that any preliminary injunction would be improper under the PLRA. Appellants also argued that even if an injunction would be proper under the PLRA, VOTE could not show a likelihood of success on the merits or that Appellants' actions rose to the level of deliberate indifference.

---

[4] The 2025 Directive also added a requirement for field staff to document any Heat Alert on the daily line count sheets and ensure that all rest breaks are clearly documented on the daily line count sheet.

The district court held a hearing on VOTE's motion for a TRO, which it granted in full on May 23, 2025 (the "May 2025 Order").[5] The May 2025 Order determined that it was substantially likely that Angola's current Heat Alert and heat-index monitoring practices posed a substantial risk of serious harm to inmates on the Farm Line. The court also determined Appellants were likely deliberately indifferent based on their decision to *raise* the Heat Alert threshold from 88 to 91 degrees Fahrenheit despite having been ordered by the court to improve heat policies. It stated that Appellants "simply ignored" the "compelling medical findings" set forth in the findings of previous court orders, which credited Dr. Vassallo's opinion that the risks of heat-related injury and death increase sharply at 88 degrees. Regarding the dangers of the Angola's heat monitoring practices, the district court cited Dr. Lavespere's deposition testimony, concluding that it showed that Appellants were "well aware of the significant temperature swings that may occur."

Appellants timely appealed the May 2025 Order. They also moved to expedite the appeal, which a separate motions panel of this court granted. At oral argument, both parties acknowledged that under the PLRA's 90-day limit for preliminary injunctive relief, the May 2025 Order would automatically expire on August 21, 2025—90 days after its entry. *See* 18 U.S.C. § 3626(a)(2). On August 28, 2025, the *VOTE II* panel deemed the appeal moot and vacated the May 2025 Order under the *Munsingwear* doctrine. *VOTE II*, 2025 WL 2481382, at *4.[6]

---

[5] The district court clarified in a later order that it had granted the TRO under its authority pursuant to the PLRA and that it would expire on August 21, 2025—90 days after its entry—unless extended or converted to permanent relief before then.

[6] A petition for rehearing en banc remains pending in *VOTE II*.

### D

Meanwhile, on July 28, 2025, VOTE moved for a "renewed, successive preliminary injunction granting the same relief" issued in the May 2025 Order. On August 22, 2025, the district court granted that motion in part (the "August 2025 Order"), explaining:

> The [c]ourt [previously] issued a lengthy [r]uling describing the factual and legal bases as to why the issuance of an Order requiring Defendants to maintain a Heat Alert threshold of 88 degrees Fahrenheit was necessary to preserve human health and safety. . . . Because there have been no intervening changes in fact or law, the [c]ourt finds that a successive preliminary injunction is warranted to once again preserve human health and safety. . . . Defendants' arguments opposing the issuance of this successive preliminary injunction do not persuade otherwise.

The district court determined that successive injunctions are not barred by the PLRA nor by any order of this court. It then recounted the extensive evidence it considered in issuing the May 2025 Order, described *supra*. The court credited Dr. Vassallo's testimony regarding the risk of harm, which was supported by data from the Occupational Health and Safety Administration, the National Weather Service, and scientific literature. Therefore, the court enjoined the use of the 91 degrees Fahrenheit threshold for Heat Alerts, and imposed an 88 degrees Fahrenheit threshold "[f]or the same compelling reasons described" in the May 2025 Order.

However, the court declined to re-issue relief regarding the frequency of heat index monitoring. The court observed that pursuant to the 2025 Directive, Louisiana was monitoring the heat index at one-hour intervals. VOTE requested monitoring at half-hour intervals. Because the difference between these frequencies was minimal, relief on that issue was not warranted.

No. 25-30478

Louisiana immediately appealed the August 2025 Injunction and sought to consolidate that appeal with its appeal of the May 2025 Injunction. However, because the *VOTE II* panel determined that the May 2025 Injunction was moot, that panel denied the motion to consolidate and denied the motion to stay without prejudice to refiling. *VOTE II*, 2025 WL 2481382, at *4. Louisiana refiled its motion for a stay pending appeal, which was granted by a separate motions panel of this court. Louisiana also filed an unopposed motion to expedite this appeal, which was granted. Oral argument was heard by the panel on November 5, 2025, just fifteen days before the preliminary injunction was set to expire.

## II

The August 2025 Order "had the 'practical effect' of a preliminary injunction." *VOTE I*, 2025 WL 2222990, at *2; *see also VOTE II*, 2025 WL 2481382, at *2. Therefore, regardless of the label given to the order by the district court, we have jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1).

## III

The circumstances presented to this panel are strikingly similar to those presented to the *VOTE I* and *VOTE II* panels. Accordingly, like those panels, we hold that this appeal is moot and that the August 2025 Order must be vacated.

### A

It is well established that for this court to retain Article III judicial authority over a case, the case must remain a case or controversy "through 'all stages of the litigation,'" including on appeal. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)). Therefore, "[i]f an event occurs while a case is pending on appeal that makes

No. 25-30478

it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed." *VOTE II*, 2025 WL 2481382, at *2 (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).

Here, an event has occurred that has made it impossible for this panel to grant effectual relief to the parties. On November 20, 2025, the August 2025 Order expired by matter of law under the PLRA, 90 days after its entry. When the injunction expired, it ceased to have any legal effect on the parties and the parties ceased to have any legally cognizable interest in the review of that injunction. *See VOTE I*, 2025 WL 2222990, at *2 ("Generally, when an injunction expires by its own terms, it is moot and there is nothing to review." (quoting *Yates v. Collier*, 677 F. App'x 915, 917 (5th Cir. 2017) (per curiam))). In short, "[b]ecause the preliminary injunction has expired, there is no remedy we can provide [Appellants] at this point." *See Smith v. Edwards*, 88 F.4th 1119, 1126 (5th Cir. 2023).

We recognize that this is the third time these parties have appeared before our court on appeal of preliminary relief in the same underlying dispute. This case was set for expedited appeal on an expedited, contemporaneous briefing schedule, with argument heard as soon as practicable—which was still just fifteen days before the injunction was set to expire as a matter of law. But the PLRA's 90-day limit does not provide for any exceptions. We note that at oral argument, VOTE averred that it does not intend to seek additional preliminary relief during the winter months where temperatures are not reasonably expected to exceed 88 degrees. The panel fully anticipates that this case will be tried on the merits as scheduled in February 2026, before temperatures increase again in the spring.

No. 25-30478

## B

Finally, for the same reasons articulated by the first two *VOTE* panels, we hold that vacatur of the August 2025 Order is appropriate under the *Munsingwear* doctrine.

The *Munsingwear* doctrine dictates that vacatur of an underlying order is appropriate where review of the order was "prevented through happenstance," that is, where mootness was "due to circumstances unattributable to any of the parties." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22–23 (1994) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950), and *Karcher v. May*, 484 U.S. 72, 82–83 (1987)). The purpose of this doctrine "is to prevent an unreviewable decision from spawning any legal consequences, so that no party is harmed by what we have called a 'preliminary' adjudication." *VOTE I*, 2025 WL 2222990, at *3 (internal quotation marks omitted) (quoting *Camreta v. Greene*, 563 U.S. 692, 713 (2011)). Our court has previously vacated PLRA preliminary injunctions that expired under the statute's 90-day limit. *See VOTE II*, 2025 WL 2481382, at *4; *VOTE I*, 2025 WL 2222990, at *4; *Yates*, 677 F. App'x at 918; *Smith*, 88 F.4th at 1127.

The August 2025 Order expired on November 20, 2025, by operation of law—not by circumstances attributable to the parties. When this appeal became moot, Louisiana was "actively pursuing [its] right to appeal." *VOTE II*, 2025 WL 2481382, at *3. Therefore, vacatur of the August 2025 Order is appropriate.

11

No. 25-30478

## IV

For the foregoing reasons, Louisiana's appeal is DISMISSED as moot and the August 2025 Order is VACATED.[7]

---

[7] Because the August 2025 Order is vacated, the motion panel's stay of that order is without substantive effect and is thus LIFTED.