# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

535 Mission Street, 25th Floor
San Francisco, CA 94105
+1 628 432 5100

**Anna Stapleton**
**Direct Dial:** +1 628 432 5188
**Email:** astapleton@paulweiss.com

New York
Brussels
Hong Kong
London
Los Angeles
Tokyo
Toronto
Washington, D.C.
Wilmington

January 16, 2026

**VIA ELECTRONIC FILING**

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 South Maestri Place
New Orleans, LA 70130

     Re:    *Voice of the Experienced* v. *LeBlanc*, No. 25-30478

Dear Mr. Cayce:

     Pursuant to Federal Rule of Appellate Procedure 28(j), plaintiffs-appellees write to inform the Court of new developments in this case. Although the panel issued a decision dismissing this appeal as moot, the mandate has been withheld pending disposition of defendants-appellants' petition for rehearing en banc. Dkt. 103

     This case involves constitutional challenges to the operation of the "Farm Line" at Louisiana State Penitentiary ("LSP"). As relevant to this appeal, plaintiffs assert that defendants' failure to mandate heat precautions adequate to protect the health of incarcerated men required to labor on the Farm Line violates the Eighth Amendment. At the time that plaintiffs sought the preliminary injunction under review in this appeal, LSP policies required that certain heat precautions be provided only when the heat index met or exceeded 91 degrees Fahrenheit. The district court granted a preliminary injunction and ordered defendants to provide those heat precautions whenever the heat index met or exceeded 88 degrees. This appeal arose from the district court's order renewing that relief as of August 22, 2025.

     On January 9, 2026, defendants' counsel informed plaintiffs' counsel of changes to the policy governing heat precautions at LSP. App. A. As relevant to this appeal, the revised policy mandates that LSP provide heat precautions whenever the heat index meets or exceeds 88 degrees Fahrenheit. *Id.* at 3.

      Although this appeal was rendered moot by the expiration of the preliminary injunction on November 20, 2025, these policy changes further underscore the futility of any further review. Defendants have repealed the policy provisions at issue in the appeal and replaced them with new provisions that will be the subject of trial, which is scheduled to commence on February 3, 2026. Accordingly, plaintiffs respectfully renew their opposition to defendants' petition for en banc review and request that the Court deny that petition and issue the mandate forthwith.

      We would appreciate it if you would circulate this letter to the panel at your earliest convenience.

      Respectfully submitted,

      /s/ Anna M. Stapleton
      Anna M. Stapleton


cc:    Counsel of record (via electronic filing)

Word Count: 328

# Appendix A

| | |
|---|---|
| Directive No. 13.067 | **CHAPTER:**<br>HEALTH CARE SERVICES |
| **LOUISIANA STATE PENITENTIARY**<br><br>January 9, 2026 | **SUBJECT:**<br>HEAT PATHOLOGY |
| | **REFERENCE:**<br>Department Regulation No. HCP8<br>Penitentiary Directive No. 13.063 |
| | **ACA STANDARD:** |

**PURPOSE**: To establish provisions for the reduction of heat pathology and to reduce the exposure to inmates identified as more vulnerable to heat.

**APPLICABILITY**: To the Louisiana State Penitentiary Security Staff and Medical Staff.

**POLICY**: It is the Warden's policy that Louisiana State Penitentiary shall have a mechanism to identify inmates more vulnerable to heat and to enforce provisions to reduce heat pathology among all inmates. Inmates with a specific chronic illness or on certain types of medications may have increased sensitivity to heat and sunlight and are at a higher risk for developing heat pathology.

**DEFINITIONS**:

**Altered Mental Status**: an abnormal state of awareness or alertness that can include drowsiness, confusion, disorientation, difficult to wake, or any strange behavior.

**Apparent Temperature (Heat Index)**: The perceived temperature in degrees Fahrenheit derived from a combination of the temperature and humidity for the indicated hour.

**Cool Water/Showers**: Tap water supplied through an independent tap water supply line.

**Health Care Practitioner/Provider**: Clinicians trained to diagnose and treat patients, such as physicians, dentists, psychologists, podiatrists, optometrists, nurse practitioners, and physician assistants.

NOTE: This shall be in accordance with each health care practitioner/provider's scope of training and applicable licensing, registration, certification, and regulatory requirements.

**Heat Alert**: A designation when the apparent temperature (heat index) outdoors reaches 88 degrees Fahrenheit, requiring special provisions.

**Heat Exhaustion**: A condition whose symptoms may include heavy sweating and a rapid pulse, a result of your body overheating. It is one of three heat-related syndromes, with heat cramps being the mildest and heat stroke being the most severe.

033287

**Heat Pathology**: Heat induced syndromes, such as heat stroke, muscle cramps and heat exhaustion, due to a failure of the heat regulating mechanisms of the body.

**Heat Stroke**: Core body temperature greater than 104 degrees Fahrenheit, with complications involving the central nervous system that occur after exposure to high temperatures. Other common symptoms include nausea, seizures, confusion, disorientation, loss of consciousness or coma.

**Photosensitivity**: An increase in the sensitivity to ultraviolet (UV) rays from the sun and other light sources. Some medications contribute to sensitivity to the sun.

**PROCEDURE:**

1. Inmates diagnosed by a health care practitioner/provider with a chronic illness that may be affected by heat as listed in Attachment B "Medical Exclusion List" or those prescribed medication that may increase heat sensitivity as listed in Attachment A "Heat Pathology Medication List" shall be evaluated and educated regarding potential adverse reactions concerning heat or photosensitivity related pathology. Implementation of appropriate measures shall be taken, if clinically indicated, to reduce the risk of adverse outcomes.

2. During clinical encounters with inmates outlined in section 1. above, the Medical Director or designee shall ensure the following:

    A. The health care practitioner/provider informs the inmate of the risk of developing heat pathology and/or photosensitivity;

    B. The health care practitioner/provider shall evaluate each inmate with a medical condition list in Attachment B "Medical Exclusion List" or prescribed a medication list in Attachment A "Heat Pathology Medications" to determine if a heat precaution duty status is indicated, provided the inmate does not have a more restrictive permanent duty status. Nothing in this directive shall prevent a health care practitioner/provider from issuing a more restrictive duty status associated with any medical condition.

    C. An inmate prescribed a medication from Attachment A "Heat Pathology Medication List" or diagnosed with a medical condition list in Attachment B "Medical Exclusion List," may opt out of a heat precaution duty status, subject to the approval of the Medical Director, if the inmate is educated on the risks by the health care practitioner/provider. Any such waiver shall be documented on [Form HCP10-a](Form HCP10-a) "Refusal to Accept Medical or Mental Health Care." If necessary, the Medical Director shall issue other appropriate duty statuses or outdoor work requirements to mitigate risks should the inmate choose to work outdoors.

033288

Penitentiary Directive No. 13.067
January 9, 2026
Page 3 of 6

- D. In exceptional cases, should the health care practitioner/provider determine that a heat precaution duty status is not necessary, the clinical rationale for this determination shall be documented in the inmate's electronic health record. Further, additional inmate education regarding heat pathology risks shall be provided and documented in the inmate's medical record.

NOTE: If medication is the sole basis for ordering a heat precaution duty status, medication compliance shall be considered by the health care practitioner/provider when ordering a heat precaution duty status.

3. Heat Precautions from May 1st through October 31st

   A. Heat Precaution Duty Status

      1. The Warden or designee shall ensure that the heat precaution duty status includes, but is not limited to the following:

         a. The inmate must be brought indoors from May 1st through October 31st of each year; once the apparent temperature reaches 88 degrees;

         b. The inmate shall not participate in sports or exercise outdoors once the apparent temperature reaches 88 degrees Fahrenheit; and

         c. The inmate shall not be re-assigned to jobs in environments that are typically hotter than normal indoor temperatures, such as kitchen or warehouse environments that are not climate controlled.

      2. The Warden or designee shall ensure a list of all inmates with a heat precaution duty status as outlined above in section 1. of this directive is provided weekly, from May 1st through October 31st of each year, to the designated supervisor responsible for their care and custody.

   B. Indoor Procedures

      1. The Warden or designee shall ensure the following indoor procedures are implemented for all inmates in all housing and work areas between the hours of 8:00 am and 8:00 pm, 7 days a week at a minimum during this Heat Precaution time frame (May 1st – October 31st).

         a. Cold water and/or ice is available;

         b. Additional cool showers and/or cool wet towels are available (cool showers is defined as tap water supplied through an independent tap water supply line); and

033289

       c. Where possible, and if effective, increase ventilation by opening windows / doors (where security of the unit allows) and / or use of fans in housing areas to reduce housing area temperatures. (i.e. work hours may be adjusted to accommodate extreme temperatures.)

       EXCEPTION: These procedures need not to be implemented in areas that are climate controlled.

C. Outdoor Procedures

1. The Warden or designee shall ensure the following outdoor procedures are implemented for all inmates in all outdoor areas between 8:00 AM and 7:00 PM (May 1st- October 31st).

   a. The following shall be available to all inmates in outdoor areas:
      i. Water and ice;
      ii. Shaded area for breaks; and
      iii. Sunscreen

2. Outside temperatures are monitored and recorded in real time using the Perry Weather Monitoring and Alert System which includes an immediate alert to the Warden or designee when the heat index reaches 88 degrees Fahrenheit.

3. When the apparent temperature (heat index) outdoors reaches 88 degrees Fahrenheit, a heat alert shall be announced; Field staff shall document the heat alert announcement on daily line count sheets, and ensure all breaks are clearly documented on the daily line count sheet.

4. Upon the announcement of a heat alert, the following measures shall be provided while working outdoors:

   a. Water and ice is available at least every 30 minutes;
   b. A rest break at least 15 minutes is offered every 45 minutes; and
   c. Work hours may be adjusted to accommodate extreme temperatures.

5. The Warden or designee shall ensure the heat precautions implemented from May 1st through October 31st of each year as outlined in section 3. above are documented and maintained at the facility. If the heat index reaches 113 degrees Fahrenheit; outdoor work shall cease.

6. When the heat index reaches 113 degrees Fahrenheit, an announcement shall be made the all outdoor work is to cease. The control center supervisor

033290

    shall input an unusual occurrence report after the announcement is made documenting the heat index and the time of the announcement.

    NOTE: Regardless of time of year or temperature, the above provisions in no way negate the standard requirements regarding the provision of adequate water and or ice for outdoor work crews and housing areas.

4.  Response to Heat Pathology Signs and Symptoms

  A.  The Warden or designee shall ensure inmates exhibiting signs and symptoms of heat pathology are immediately referred to the medical department for evaluation and/or treatment.

  B.  The Medical Director shall ensure that, if an inmate is diagnosed with heat stroke, a written medical report on the diagnosis and surrounding incident is emailed to the Chief Medical Officer as soon as possible after the diagnosis, but no later than 24 hours (excluding weekends and holidays).

5.  Inmate Education

  A.  The Warden or designee shall ensure inmates outlined in Section 1. above receive heat pathology education that includes, but is not limited to, the following:

    1.  Increased consumption of liquids;
    2.  Avoidance of undue exposure to the sun;
    3.  Signs and symptoms of dehydration;
    4.  Signs and symptoms of dermatological conditions secondary to photosensitivity including sunburn and rashes;
    5.  Signs and symptoms of medication toxicity (any altered mental status); and
    6.  Avoidance of excessive exhausting activities in high temperatures.

  B.  The Warden or designee shall ensure documentation of inmates receiving heat pathology education through utilization of [Form HCP8-a](#) "Heat Pathology Inmate Education." This document shall be scanned into the Electronic Health Record.

6.  Staff Training

The Warden or designee shall ensure annual roll call training is provided to correctional officers during April of each year in the signs and symptoms and prevention of heat pathology as outlined in Heat Pathology Staff Training (Attachment C) and the provisions of this directive. Documentation of this training shall be maintained at the unit.

7.  Heat Pathology Medications

033291

Penitentiary Directive No. 13.067
January 9, 2026
Page 6 of 6

      The DPS&C Pharmacy and Therapeutics (P&T) Committee shall be responsible for annually reviewing and updating Attachment A "Heat Pathology Medications List" as needed.

s/Darrel Vannoy                        s/Paul Toce, MD
Warden                                      Medical Director

Attachments:      A      Heat Pathology Medications List
                        B      Medical Exclusion List
                        C      Heat Pathology Staff Training

Form:          HCP8-a      Heat Pathology Offender Education

This policy supersedes Penitentiary Directive No. 13.067 dated April 8, 2025.

033292